PAUL K. RANDALL *vs.* HORACE L. HAZELTON & another.

If a mortgagee of land voluntarily promises the mortgagor not to act under a power of sale contained in the mortgage without notice to him, but is afterwards induced by falsehood to assign the mortgage to persons who thereupon proceed to sell the land, under the power of sale, without notice to the mortgagor and clandestinely, whereby the latter is deprived of his equity of redemption, he can maintain no action at law against the par-- ties guilty of the fraud.

THE declaration in this action, which was brought in this court, contained one count in tort and one in contract.

The first count, in tort, set forth in substance that the plaintiff was possessed of an interest in, and had the possession of, an estate in Boston, subject to a mortgage given by a former owner thereof to the New England Mutual Life Insurance Company, which contained a power of sale authorizing the said mortgagees and their assigns, in case of default by the mortgagor, to sell and dispose of the premises at public auction, on the premises, first giving notice of the time and place of sale by publishing the same three weeks in a newspaper in the county of Suffolk, and to make and deliver a deed thereof to the purchaser; that he duly and regularly paid the interest on the debt secured by the mortgage as it fell due; that before the principal fell due the mortgagees, in reply to an inquiry put by him, assured him that they did not want the money to be paid to them when it should become due, but would give him ample notice when they should desire such payment; that he relied upon such promise and made no provision for the payment of the debt, as he otherwise might easily and would have done; that the mortgagees never gave him notice that they desired payment of the principal; that the defendants, contriving and conspiring together to obtain control of the mortgage, in order to deprive the plaintiff of his property, falsely and maliciously represented to the mortgagees that he desired that the mortgage should be assigned to Edwin S. Merrill, whom they had re- quested to become the assignee thereof for their benefit, know- ing said representation to be false; that they thereby obtained

from the mortgagees an assignment of the mortgage, and the mortgagees would not have assigned the same but for said fraudulent misrepresentations, and thereafter, the principal having become due, induced Merrill to appoint Nathan H. Hand, one of the defendants, as his agent, and the defendants thereupon privily entered upon the premises in the absence of the plaintiff and caused a certificate of their entry to be recorded, and afterwards caused an advertisement to be inserted in a newspaper of small circulation in the county of Suffolk, containing a notice of the time and place of sale of the premises, said advertisement being so expressed as not to indicate what real estate was thereby referred to ; that the sale was accordingly made at an hour when the defendants knew that the plaintiff would be absent from home ; and said Hand bought the same and took a conveyance thereof; that the plaintiff had no notice of the intended sale, or of the assignment of the mortgage, until after the completion of the sale, and he was compelled to pay to said Hand the sum of five hundred dollars to obtain a deed of the estate, and was otherwise injured.

The second count, in contract, was for five hundred dollars money had and received, being the money mentioned in the first count of this declaration as paid to said Hand.

The defendants demurred to the declaration, and the case was reserved by the chief justice for the determination of the whole court.

*S. Bartlett & G. S. Hale,* for the plaintiff. There are numerous declarations of general principles which fully sustain this action. Com. Dig. Action on the Case, A ; Action on the Case for Deceit, A 1, A 10. *Pasley* v. *Freeman,* 3 T. R. 51, 64 ; *S. C* 2 Smith's Lead. Cas. (6th Amer. ed.) 157. *Lobdell* v. *Baker,* 1 Met. 193, 201. *Baily* v. *Merrell,* 3 Bulst. 95. The cases of *Benton* v. *Pratt,* 2 Wend. 385 ; *Wolcott* v. *Coleman,* 2 Conn. 324, 336 ; and *Green* v. *Button,* Tyrwh. & Grang. 118, are especially analogous to the present. See also *Tarleton* v. *M'Gawley,* Peake R. 205 ; *Sheperd* v. *Wakeman,* 1 Sid. 79 ; *Weller* v *Baker,* 2 Wils. 414, 422 ; *Blofield* v. *Payne,* 4 B. & Ad. 410 ; *Evans* v. *Collins,* 5 Q. B. 804 ; *Moore* v. *Meagher,* 1 Taunt. 39

*Adams* v. *Paige,* 7 Pick. 542. If a person has an expectation, merely, founded on a moral obligation, that he will have a con‑tract, one who fraudulently interposes to prevent the execut on of it must take the consequences.

But in this case, the agreement of the mortgagees was bind‑ing, and a court of equity would have prohibited them from violating it. 2 Cruise Dig. (Greenl. ed.) tit. xv. *c.* 6, § 12, *n.* Broom's Max. 209. *Raymond* v. *Sturges,* 23 Conn. 134. *Ex parte·Baker,* 1 Deac. & Chit. 533; *S. C.* 2 Deac. & Chit. 362. *Lawrence* v. *Fletcher,* 8 Met. 153. *Chesterfield* v. *Janssen,* 2 Ves. Sen. 156. This arrangement was also for the benefit of the mortgagees, to secure them a permanent investment. See *Hammond* v. *Cook,* 25 Verm. 295.

The defendants obtained property on a false pretense, for the purpose of depriving the plaintiff of his property privily; and they might haye been indicted for it. *Commonwealth* v. *Hunt,* 4 Met. 111, 123. *Commonwealth* v. *Drew,* 19 Pick. 179, 184. *Rex* v. *Cope,* 1 Stra. 144. *Rex* v. *Rispal,* 3 Burr. 1320.

*J. P. Converse & E. A. Kelly,* for the defendants.

Colt, J. The averment of conspiracy in the first count of the declaration cannot change the nature of the action, or add anything to its legal force and effect. The gist of the action is the tort committed and the damage resulting therefrom. To charge both defendants, it is necessary to prove a combination or joint action on their part, and the allegation of a conspiracy may be a proper mode of alleging such joint action; but for any other purpose it is wholly immaterial. If the action cannot be sustained against one of the defendants, then it must fail, although another person is included and a conspiracy alleged. *Parker* v. *Huntington,* 2 Gray, 125. *Hutchins* v. *Hutchins,* 7 Hill, 104.

The question raised by the demurrer is whether, upon the facts charged, the action can be maintained. It is an ancient and well established legal principle that fraud without damage or damage without fraud gives no cause of action; yet when the two do concur, there an action lieth. 3 Bulst. 95. Actions like the one under consideration are all based upon this proposition

but it cannot safely be applied as a test by which to determine whether the facts in any case constitute an actionable wrong, without keeping in mind the meaning which the law, by a series of judicial decisions, has attached to the terms used. It is well settled that every falsehood is not necessarily a legal fraud or false representation. It is said that a false representation is an affirmation of that which the party knows to be false or does not know to be true, to another's loss or his own gain. *Lobdell* v. *Baker*, 1 Met. 201. So in reference to the term damage, the law is that it must be a loss brought upon the party complaining by a violation of some legal right, or it will be considered as merely *damnum absque injuria.* There is a large class of moral rights and duties, sometimes called imperfect rights and obligations, which the law does not attempt to enforce or protect. The refusal or discontinuance of a favor gives no cause of action. If one trusts to a mere gratuitous promise of favor from another and is disappointed, the law will not protect him from the consequence of his undue confidence, nor encourage carelessness or want of prudence in affairs. Damages can never be recovered where they result from a lawful act of the defendant. The exercise of a right conferred by a valid contract, in the manner provided by its terms, cannot be the ground of an action. The law will not inquire into the motives of the party exercising such right, however unfriendly and selfish. The trouble and expense and risk of loss ought to and must be presumed to have been contemplated when the contract was entered into. The foreclosure of a mortgage under a power of sale, for example, may be made at such time and under such circumstances as to cause great distress and sacrifice to the mortgagor; but, whatever the motive of the mortgagee, no remedy is afforded for his oppressive conduct, if the requirements of the contract have been fulfilled.

But a more important consideration in this connection is, that the damage which this doctrine contemplates must not only be caused by the fraud and misconduct of the defendant, but it must be the direct and immediate consequence of the wrongful act. The law looks to the proximate and not the remote cause

of the injury. It were infinite, says Lord Bacon, to consider the causes of causes and their impulsion of each other; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree. This is the only practical rule which, in view of the complication which surrounds this doctrine of causation, can be adopted in the administration of justice by human tribunals. Where the fraud and damage sustain this intimate relation of proximate cause and effect, and not otherwise, they are said to concur, in the sense of the proposition above stated.

Applying the doctrine thus explained to the plaintiff's case as stated in the first count, we are of opinion that he sets forth no legal cause of action. The declaration shows no consideration for the alleged promise of the mortgagees to inform the plaintiff, in case the amount of the debt should be wanted by them. It was an agreement not legally binding upon them. There was nothing in it to prevent them in law from proceeding to do all the acts in relation to advertising and selling the property which were done by the defendants; nor did it prevent them from assigning the mortgage. It cannot be said to be an invasion of any legal right for the defendants to deprive the plaintiff even by falsehood of the benefit of this gratuitous undertaking. *Hutchins* v. *Hutchins*, 7 Hill, 104. It is not alleged that the defendants knew of the alleged promise of the mortgagees. The false representation of a material existing fact for the purpose of procuring the transfer might have enabled the mortgagees to avoid it, or maintain an action for any loss sustained by them, but until avoided the title passed to the defendant. If the declaration had contained averments of a good legal consideration for the promise to give the notice to the plaintiff, then it would seem to follow that the plaintiff's remedy would be ample against the mortgagees for all loss suffered by him by reason of the breach of their agreement, leaving them to whatever remedy they might have against the defendants for the fraud practised by them. And this fact is said by Morton, J., in *Lamb* v *Stone*, 11 Pick. 532, which was a case like this, to be good ground for refusing relief; for if the plaintiff " may have redress

by any of the forms of actions now known and practised, it would be unwise and unsafe to sanction an untried one, the practical operation of which cannot be fully foreseen."

But the more important fact is, that this specific act of obtaining the assignment in the manner stated in itself produced no direct and immediate damage to the plaintiff. The damage resulted solely from the foreclosure and forced sale of the premises, and would have been no more and no less if the mortgage had not been assigned, and the mortgagees had pursued precisely the course charged upon the defendants in regard to the sale. It was undoubtedly a necessary step in order that the defendants might practise the alleged oppression; but it was not the immediate cause of the injury. The substantial, efficient and immediate cause of the loss to the plaintiff was the foreclosure and sale. And we are not permitted to go behind and inquire into the antecedent causes, near or remote. *Marble* v. *Worcester*, 4 Gray, 395. *Tisdale* v. *Norton*, 8 Met. 388. We lay out of the case, therefore, that part of it which rests upon the false representations made to procure the transfer of the mortgage.

The cases cited by the plaintiff we think ought not to control us in this result. In *Benton* v. *Pratt*, 2 Wend. 385, the court say, " Here is the assertion of an unqualified falsehood with a fraudulent intent as to a present or existing fact, and a direct, positive and material injury resulting therefrom to the plaintiff." In the American note to *Pasley* v. *Freeman*, 2 Smith's Lead. Cas. 153, this case, it is said, certainly goes very far; but whether open to criticism or not in its main doctrine, it differs in the material point above indicated from the present case. So in *Green* v. *Button*, Tyrwh. & Grang. 118, it was held that the damage to the plaintiff by delaying him in his work and injuring his credit directly resulted from the defendant's act. In the *Tunbridge Wells Dippers' case*, 2 Wils. 414, while the court remark that there was a real damage in depriving the plaintiff of some gratuity, they also say in the same sentence that the injury was by disturbing the dippers in the exercise of their right or employment, which it seems by some private statute they were entitled to.

The remaining features of the first count are more rapidly disposed of. They relate to acts of the defendants in connec tion with the entry, advertisement and sale of the property. It is not contended that these acts were not in compliance with the provisions of law and the power of sale. Indeed, the theory of the case is, that the sale was legal, and so the plaintiff was compelled to pay his money to repurchase the estate. As already suggested, no action can be maintained against one on account of the exercise of a legal right, whatever the motive that dictated such exercise. *Bragg* v. *Raymond*, 11 Cush. 274. *Lamb* v. *Stone, ubi supra. Wellington* v. *Small*, 3 Cush. 148. Sedgw. on Dam. (3d ed.) 31.

As to the second count in the declaration, it is sufficient to say, in support of the demurrer, that although the plaintiff may waive the tort, and support a count for money had and received by evidence that the defendants obtained his money by fraud, yet, if it appears from the count itself that there was no legal fraud to waive, a demurrer to it must be sustained. The count for money had and received in its terms expressly adopts the facts set forth in the first count, and founds the claim on those facts. It is like a bill of particulars annexed. The first fails, as we have seen, and the demurrer to the second must be sustained.

It is unnecessary to consider whether the counts are properly joined, or to advert to the further objection that the defendant Hazelton is not alleged to have received any of the money paid by the plaintiff. *Demurrer sustained.*