### LONG v. HUNTER, PEARCE & BATTEY.

1. RES JUDICATA—DEMURRER.—Ruling by Circuit Judge that a demurrer to a cause of action is too general, is binding on subsequent Circuit Judge before whom the demurrer is interposed to same cause of action, that it does not state facts sufficient to constitute a cause of action.
2. CONTRACT—LETTERS.—Construction of letters by Judge to change a written contract, sustained.
3. MORTGAGES—PRINCIPAL AND AGENT.—PAYMENT of mortgage debt to agent takes away from principal the right to advertise the property for sale.
4. PLEADNIGS—CHARGE.—Remedy to cure defective and insufficient pleadings is by motion to make more definite and certain, and not by request to charge.

Before GAGE, J., Hampton, February, 1900. Affirmed.

Action by M. K. Long against John H. Hunter, Wm. K. Pearce and F. C. Battey, copartners under name of Hunter,

Pearce & Battey.    From judgment on verdict for plaintiff, defendants appeal.

*Mr. I. L. Tobin,* for appellants, cites : *Special damages must be pleaded:* 9 S. E. R., 733; 3 Strob., 373.

*Messrs. A. McIver Bostick* and *W. S. Tillinghast,* contra. The former cites : *Questions raised by second demurrer res judicata:* 51 S. C., 33. *Alleged errors by prior Judge not before Court, because no notice of appeal or exceptions were served thereto at time of rendition:* 30 S. C., 450; Code, 11.

July 9, 1900.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    The complaint herein contains four causes of action, the first of which is as follows : Paragraph 1 of the complaint alleges the partnership of the defendants. Paragraph 2 alleges that the plaintiff and J. C. Smith, then doing business under the firm name of Long & Smith, on the 13th of January, 1893, executed a mortgage in favor of the defendants on certain real and personal property therein mentioned, to secure the payment of $1,055.86, to be advanced to the said Long & Smith by the defendants during that year.    The other paragraphs are as follows : "3. That the said Smith, subsequently, and during the season of 1893, withdrew from the partnership of the said Long & Smith, transferred and delivered all his interest and ownership in the said business and property of the partnership to plaintiff, the said M. K. Long.    4. That the said Long & Smith, by their obligations above referred to, agreed to ship said defendants all turpentine and rosin manufactured by them during the said season of 1893, for sale on commission, and to pay ten cents per barrel on rosin short of 900 barrels to be shipped by them, and fifty cents per barrel on spirits of turpentine short of 300 barrels.    5. That plaintiff above named shipped defendants above named all turpentine and rosins manufactured by him and by the said Long & Smith during the year of 1893, in accordance with contract above referred

to, said shipment falling short of number agreed to b.
shipped as aforesaid, by 137 barrels spirits of turpentine and
387 barrels of rosin. That the failure on the part of plain-
tiff to ship the number of barrels, both of spirits of turpen-
tine and rosin, required by the contract aforesaid, was not
due to any default on his part, but was at the express order
and directions of defendants aforesaid subsequently deliv-
ered to him in the midst of the season of 1893, requiring him
to curtail his manufacture and shipments, in compliance with
which order and direction, plaintiff greatly reduced and to a
large extent discontinued the manufacture of and shipment
of turpentine and rosin. 6. That notwithstanding the said
plaintiff's failure to ship the said promised number, or more
than he actually shipped, of barrels of turpentine and rosins
was the direct result of the said directions on the part of the
defendants aforesaid, with which plaintiff was forced and
compelled to comply, as he was dependent on them for
advances to run the business, the defendants have unjustly,
wrongfully, unlawfully and without right, charged the ac-
count of said Long & Smith with $107.20 shortage. 7.
That payments were made from time to time during
the season of 1893, from the proceeds of sales of ship-
ments as aforesaid, by said plaintiff, and applied to said
indebtedness, leaving a balance due on said indebted-
ness by said plaintiff to defendants aforesaid at that
time, to wit: the close of the season of 1893, of only
$72.83, not including the charge of $107.20 shortage
unjustly, wrongfully and unlawfully charged as afore-
said, as shown by the within statements of account fur-
nished by defendants to plaintiff, and by their acknowledg-
ments and admissions to him. 8. That afterwards, and
some time during the year of 1894, the defendants aforesaid
seized and caused to be sold in the city of Savannah, Ga.,
seven barrels of spirits of turpentine and eight barrels of
rosin, of the value respectively of $96 and $16, the property
of plaintiff, and have failed and refused to account in any
way to plaintiff for proceeds or value of the said seizure and

sale, and have not even credited the same, or any part thereof, on the balance claimed by them on the mortgage deed aforesaid, although plaintiff owed defendant no other debt than as aforesaid. 9. That said plaintiff, from the proceeds of his shipments of turpentine and rosin, as aforesaid, and for the value of the turpentine and rosin seized and sold by the defendants, as aforesaid, in Savannah, Ga., has overpaid the aforesaid mortgage indebtedness to the defendants by the sum of $36, and defendants are justly indebted to him in the sum of $36, with interest on same. 10. That notwithstanding said mortgage has been paid in full, and overpaid as aforesaid, and subsequent to the seizure and sale of plaintiff's property, set forth in paragraph 8 above, during the month of November, 1894, defendants, by virtue of a power of sale contained in the mortgage herein set forth, advertised and are advertising for sale at public outcry at Hampton Court House, in said county and State of South Carolina, on the first Monday in December, the same being salesday, of the present year (1894), the above described property of plaintiff, covered by the said mortgage, to satisfy balance claimed by them on the debt secured thereby. 11. That a sale of plaintiff's property, under power as aforesaid, before an adjudication and judicial determination of their accounts and claims between plaintiff and defendants would greatly embarrass, and would work an irreparable injury and loss to him, in the event that anything at all should be adjudged due on said mortgage. 12. The plaintiff is ready and willing, in the event that any amount at all should be adjudged to defendants, to pay the same and redeem his property, which is worth considerable more than the amount claimed by the defendants and not less than $700."

*Second Cause of Action:* After alleging the facts hereinbefore mentioned as to the partnership of the plaintiff with J. C. Smith, and the withdrawal of Smith therefrom, also the facts as to the partnership between the defendants, and the facts relative to the execution of the mortgage hereinbefore mentioned, the plaintiff makes the following allegations

in his second cause of action: "3. That subsequent to the withdrawal of said Smith, as aforesaid, the plaintiff herein was notified, directed and ordered by the said defendants, in the midst of the season of 1893, to cease working any but first or virgin boxes in his business as a manufacturer and shipper of turpentine and rosin, which plaintiff did to his great loss and damage, as a large number, to wit: about 40,000 of his boxes, were of the prohibited class, and plaintiff's manufacture of both turpentine and rosin was greatly curtailed thereby. 4. That plaintiff was forced and compelled to comply with the said order of defendants at all costs, he being absolutely dependent upon them for the advances in money and supplies agreed to be advanced by the defendants and necessary to carry on said business, and bound by the contract aforesaid to make all shipments for the year to the said defendants, which contract rendered it impossible for plaintiff to transfer his business at the time to other commission merchants, or elsewhere obtain the necessary advances to run the business. 5. That this order on the part of the defendants was never authorized or willingly acquiesced in by plaintiff, but was simply obeyed by him through necessity as aforesaid, thereby inflicting upon him wrongfully, unjustly, unlawfully loss and damage in money, labor and crude turpentine abandoned and wasted, to the value or amount of $400."

*Third Cause of Action:* The first paragraph of this cause of action alleges the partnership of the defendants. The other allegations are as follows: "2. That during the year of 1894, in the city of Savannah, Ga., the defendants above named, unjustly, unlawfully and without right or authority whatsoever, seized and caused to be sold seven barrels spirits of turpentine and eight barrels of rosin, the property of plaintiff, shipped by him to other parties for sale on plaintiff's account, under a pretended lien or claim over the same on the part of the said defendants. 3. That plaintiff was damaged by said seizure and sale in the diversion of the proceeds thereof from his business, and in the injury to his repu-

tation for honesty and fair dealing, and consequently to his credit, which made it impossible for him to continue to obtain the necessary advances to run his business as a manufacturer and shipper of turpentine and rosin, the said seizure and sale being a matter of public and general notoriety, to the amount of $300."

*Fourth Cause of Action:* Paragraph 1 is the same as that mentioned in the preceding cause of action.     The other allegations are as follows: "2.   That in the month of November, 1894, defendants above named unjustly, wrongfully and unlawfully, and without right or authority, by virtue of a power of sale contained in mortgage previously, to wit: in the year 1893, executed to defendants by the firm of Long & Smith, of which firm plaintiff was at the time a member, the said mortgage having been satisfied and paid in full, advertised and are advertising for sale at public outcry at Hampton C. H., South Carolina, on the first Monday in December of said year of 1894, the same being salesday, real and personal property of plaintiff to satisfy a pretended balance claimed by said defendants on said mortgage debt.   3.   That plaintiff has been damaged by the aforesaid unauthorized and unlawful act of defendants in his reputation and credit, and thereby hampered and damaged in his business as a manufacturer and shipper of turpentine and rosin, in the amount of $300."

The amended supplemental complaint, omitting the first cause of action, to which the defendants did not interpose a demurrer, is as follows: "The plaintiff above named for an amended supplemental complaint herein alleges: * * *

*"For a Second Cause of Action:* 1.   That subsequent to the commencement of this action and the various transactions set forth in the original complaint herein, the defendants named also in said complaint, to wit: John H. Hunter, Wm. K. Pearce and Frank C. Battey, copartners doing business under the firm name of Hunter, Pearce & Battey, proceeded to advertise and were about to sell, pursuant to advertisement mentioned in the original complaint herein, the property of the

plaintiff described in said complaint, which is hereby referred to and made a part of this amended supplemental complaint, and thereby forced plaintiff herein, the injunction prayed in the original complaint having been refused, to raise and pay over the balance claimed by them upon the mortgage set out in the original complaint, to wit: a mortgage executed by the firm of Long & Smith, of which plaintiff was at the time of execution thereof a member, although the said mortgage had been paid in full and overpaid, as shown in the original complaint, to which said payment, made under protest, plaintiff was compelled in order to preserve the status of his property pending judicial determination in this action of the state of accounts between parties thereto. 2. That the plaintiff was unjustly, wrongfully, unlawfully compelled by the aforesaid unjust and unauthorized act and attempt on the part of the defendants aforesaid, in the manner aforesaid, to raise a considerable sum of money to stop said sale, at great inconvenience, trouble and expense to himself, to wit: loss of time from his business, worry of mind, trouble and expense of executing securities and borrowing money, loss of capital necessary to his business, and consequent embarrassment thereto, to his damage of $100."

The jury rendered a verdict in favor of the plaintiff of $611.44. The defendants appealed upon the following exceptions:

"The presiding Judge committed error of law: 1. In overruling defendant's demurrer to the second cause of action in the complaint, on the grounds stated therein, that the same does not state facts sufficient to constitute a cause of action.

"2. In overruling defendant's demurrer to the fourth cause of action stated in the complaint, on the ground stated therein, that the same does not state facts sufficient to constitute a cause of action.

"3. In charging the jury that 'if the shortage of 387 barrels of rosin and the 137 barrels of turpentine was caused because Long did not work the old boxes, he could not be held responsible for any loss to the other side, because he and

the other side had agreed not to work the old boxes,' there being nothing in the letter referred to from defendants to the plaintiff, containing the alleged agreement between the parties, which could be construed into anything more than a recommendation from a factor in the market to his customer to ship a better, a different quality of material, for his customer's advantage alone.

"4. In charging the jury, 'if when Long's property was advertised in Hampton, and this $243 was collected, if at that time the money was paid by knocking off of this account and paid by collection in Hampton (Savannah?), the defendant, Hunter, had no right to collect anything more; and if thereby Long has been damaged, he is liable;' whereas, it is submitted as a matter of law, that the defendants had the right at any time after the debt became due, and prior to receipt by him of the amount due thereon from the Court in Savannah and the plaintiff in Hampton, which occurred about the same time, to wit: salesday in December, 1894, to advertise the land for sale under the mortgage.

"5. In allowing proof of special and speculative damage to go to the jury under the allegations of the fourth cause of action in the amended complaint, and the last cause of action in the supplemental complaint, over the objection of the defendant's attorney.

"6. In refusing to charge the jury, as requested by the defendants, as follows, in the third request to charge: 'That the letter of the defendants does not charge or modify the contract as to quantity of turpentine and rosin the plaintiff agreed to ship to the defendants, but simply expressed the wishes of the defendants, considering the welfare of the plaintiff, that the plaintiff would stop chipping old boxes and chip no other but virgin timber, and the scrape from the old boxes.'

"7. In refusing to charge the jury as requested by the defendants in the fourth request to charge: 'That unless the plaintiff was so under the influence or control of the defendants that he was not possessed of free agency in the matter,

and the defendants made use of their power in such a way as to prevent him from shipping the number of barrels of turpentine agreed upon, or unless there was some change in the contract, in whole or in part, with reference to payment for non-shipments, that the plaintiff is bound by his contract, and the defendants have the right to make the charge against him for non-shipment provided in the agreement.'

"8. In refusing to charge the jury, as requested by the defendants in their fifth request to charge: 'That where an attempt is made to prove special damages, that the facts evidencing such damage must be so described and pointed out that the defendants may have such information in regard to the same as to enable them to intelligently investigate and inquire into the truth or falsity thereof; and unless the proof of such damage is sufficiently specific as to furnish the information for such inquiry or information, the jury cannot consider such testimony.'

"9. In refusing to charge the jury, as requested by the defendants in the seventh request to charge: 'The proof of mere advertisement, without seizure of another's property, under a power contained in a mortgage in good faith, for the purpose of enforcing the collection of a debt which the mortgagee honestly believes to be due and secured by the same, will not sustain an action for damages for injury to reputation and credit.'

"10. In refusing to charge the jury, as requested by the defendants in the eighth request to charge: 'That if any amount, however small, was due on the mortgage debt which the plaintiff refused to pay, the mortgagee had the right to advertise and sell the property to enforce collection of the same.'

"11. In allowing plaintiff to testify, against the objection of the defendants, that in consequence of not receiving that $100 from Gregg, Jones & Wood, he was injured in his reputation and credit.

"12. Defendants except to the order of Judge Aldrich in

overruling the demurrer of the defendants, that several causes of action are improperly united in the complaint.

"13. Defendants except to the order of Judge Aldrich in overruling defendants' demurrer to plaintiff's second cause of action.

"14. Defendants except to order of Judge Aldrich overruling defendants' demurrer to plaintiff's third cause of action. Defendants except to order of Judge Aldrich overruling defendants' demurrer to plaintiff's fourth cause of action.

"15. Defendants except to order of Judge Aldrich in overruling defendants' demurrer to plaintiff's second cause of action, stated in amended supplemental complaint.

"16. Defendants except to order of Judge Aldrich, in that if the ruling of the Court was correct, that the demurrers were inconsistent and would not stand together, the defendants should have been allowed to elect which they should rely upon, and the Court should not have passed upon said demurrers until after such election or refusal to elect."

The respondent's attorneys served the following notice: "Please take notice, that upon appeal herein, plaintiff, respondent, will urge that the judgment of the Court below and the rulings of his Honor, Judge Gage, especially as to the demurrers to the various causes of action, be sustained, not only upon the grounds mentioned in the proceedings herein by his Honor, but also upon the additional ground that said demurrers had already been passed upon and overruled by Judge Aldrich, and the same are *res judicata.*" The appellant's attorney argued only four of the foregoing exceptions. We will discuss the exceptions in regular order.

*Exceptions 1 and 2:* This case was first heard by Judge Aldrich, who ruled that the demurrer to the fourth cause of action was too general to be considered, and that the demurrer to the second cause of action in the supplemental complaint was open to the same objection, as they failed to point out in what particulars the alleged

11—58

causes of action were insufficient. This ruling was binding on Judge Gage, and he did not err in overruling the said demurrers. *Turner* v. *B. & L. Assn.,* 51 S. C., 33; *Cartin* v. *R. R. Co.,* 43 S. C., 221; *Kerchner* v. *Singletary,* 15 S. C., 535.

*Exception 3:* The record contains the following in the presiding Judge's charge to the jury, to wit: "Long says that on the 22d day of August, 1893, he wrote this letter, here it is: 'We received a notice from a meeting of the naval stores association through you, urging all operators to stop work on all turpentine boxes except virgin, on or before the 26th of August. You will please let me know by return mail what you want me to do in regard to the matter, as I am at a loss to know what to do.' Long wrote that letter to Hunter; it is dated the 22d day of August. On the 24th day of August, Hunter writes back this letter to Long: 'Replying to your favor of the 22d instant, beg to say as there is no money to you in working old boxes at the price that spirits and rosin are now bringing, we want you to stop chipping your old boxes and commence at once to take off your scrape.' Now, gentlemen, as I told you in the start, the relationship between these two parties are fixed and covered by this contract. When two parties meet and enter into a contract, it takes two parties to change that contract; if one undertakes to change it, he breaks the contract. Now, what do these letters mean? Long and Hunter made the contract, and Long and Hunter have the right to modify the contract or add anything to it. Now, I charge you—I can charge you this, because these letters are in writing, and I can see it in black and white, and the law says I can charge you on what's in writing, can explain it to you and construe it. They mean, as I construe it, that Long and Hunter undertook to modify or, more properly, to add to the contract they had made, and they agreed this between themselves, that at least no more old boxes should be worked in 1893, and they agreed that only virgin boxes should be worked after the 26th of August. Now, I charge you, this

shortage of rosin and turpentine, to wit : if the 387 barrels of rosin and the 137 barrels of spirits of turpentine, of 1893, was caused because Long did not work the old boxes, if it was caused because he didn't work the old boxes, I told you he had a right not to work the old boxes, because he and the other side agreed, and he can't be held responsible for any loss to the other side, because he and the other side agreed not to work the old boxes. So much for these two items, $68.50 and $38.70, charged against Long." This Court sees no error in the presiding Judge's construction of said letters.

*Exception 4:* If the amount due by the plaintiff to the defendants had been paid to a person having the right to receive it for the defendants, they did not have the right to advertise his property for sale. Payment of money to an agent authorized to receive it is equivalent to payment to the principal, even if it never reaches his hands.

*Exception 5:* Waiving the objection to this exception as being too general for consideration, we have failed to find in the record any facts upon which it can be properly predicated.

*Exception 6:* This exception is disposed of by what has already been said in considering the third exception.

*Exception 7:* The Circuit Judge construed the letter to be a modification of the original contract, and this rendered merely speculative the question raised by said exception.

*Exception 8:* If the pleadings were defective and insufficient, the defendants' remedy was by motion to require the plaintiff to make his allegations definite and certain, but not by a request to charge.

*Exception 9:* The request contained an abstract proposition of law, and was not responsive to the issues made by the pleadings.

*Exception 10:* Although the Circuit Judge did not specifically charge as requested, the proposition contained therein was nevertheless embraced in his general charge.

*Exception 11:* We fail to find in the record any facts to which the exception could properly be referred.

*Exception 12:* This Court is satisfied with the reasons assigned by Judge Aldrich in overruling the demurrer.

*Exceptions 13, 14 and 15:* Waiving the objection to these exceptions that they are too general to be considered, we fail to discover any error on the part of Judge Aldrich in overruling the demurrers.

*Exception 16:* There were other grounds upon which Judge Aldrich overruled the demurrers, and as they are satisfactory to us, the exception cannot be sustained, even conceding that one of the reasons assigned by him was erroneous.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.