NORINE PETERSON, Appellant, v. KANSAS CITY LIFE INSURANCE COMPANY, a Corporation.—98 S. W. (2d) 770.

Division One, November 12, 1936.

*Prince & Beery* and *Johnson, Garnett & Quinn* for appellant.

*Frank W. McAllister, James W. Broaddus, Stanley Bassett* and *L. R. Williams* for respondent.

HYDE, C.—This is an action at law for damages for wrongful foreclosure of a deed of trust, conveying certain real estate in the city of Independence to secure the payment of a note for $30,000 (reduced to $24,000), made to and held by defendant. Plaintiff had

a verdict for $46,000 actual damages and $20,000 punitive damages. Thereafter, the trial court ordered plaintiff to remit all of the punitive damages and all of the actual damages in excess of $7500. Plaintiff refused to file a *remittitur* and the court sustained defendant's motion for a new trial. Plaintiff has appealed from this order granting defendant a new trial. Defendant contends that, regardless of whether the trial court's order can be sustained on the ground assigned, it was proper because plaintiff was not entitled to maintain an action at law for damages. If that contention can be sustained it will be unnecessary to consider other grounds urged.

In 1927, plaintiff constructed, on her land in Independence, a brick office and garage building which she called the Liberty Building. At that time she borrowed $30,000 from defendant and gave as security a first trust deed on the Liberty Building. The note provided for semi-annual payments on the principal and all of these which were due prior to the date of foreclosure (November 23, 1931) had been paid (they were paid three years in advance by a $5000 payment in 1928), reducing the principal balance due to $24,000. Plaintiff, however, failed to pay the semi-annual installments of interest due in 1931 (January 8th and July 8th); taxes totaling about $1300 were delinquent; and an insurance premium of $234 was paid by defendant to keep the property insured. All of these things constituted defaults under the covenants of trust deed which gave defendant the right to foreclose. Plaintiff had sold the building in 1928 and had carried a second mortgage on it for part of the purchase price. This purchaser had failed to make the payments to plaintiff which the second mortgage required and plaintiff foreclosed it. Apparently this foreclosure was completed early in 1931.

Plaintiff does not deny these defaults and does not now question defendant's right to commence foreclosure when it did or to sell the property on the day advertised. The pleadings are summarized in plaintiff's brief, as follows:

"Plaintiff's petition alleges that the sale was wrongfully conducted about three o'clock P. M. on the day fixed in the advertisement of sale, and that the usual and customary time for holding such sales was at two o'clock P. M.; that the courthouse at Independence, where the sale was held, has four front doors, while the advertisement of the sale recited only that the sale would occur at the 'front' door, without specifying the particular door intended. The petition further alleges that as the result of the uncertainty as to the exact place of the sale, and the unusual time at which the pretended sale occurred, there was no bidder in attendance except defendant, who wrongfully acquired the property for the grossly inadequate consideration of $18,000.00, and that, at the time of the sale the property was of the reasonable value of $64,000.00. It is also alleged that

plaintiff was, by the wrongful and grossly inadequate sale, subjected to liability for a deficiency of about $6,000.00 on the note which the mortgage secured; that the sale was fraudulent, wrongful and intentional. The prayer of the petition is for $46,000.00 actual and $25,000.00 punitive damages. The answer admits the mortgage and the foreclosure, and denies generally the other allegations of the petition.''

The theory upon which the case was tried, is thus stated in plaintiff's reply brief:

''The case was not tried, by either party, on the theory of fraud. The action, as was the theory of *both* parties in the trial below, is for damages for a foreclosure which was wrongful because of the form of the notice and the lateness of the hour at which the sale was conducted, resulting in a sale without competitive bidding.'' (We take it that plaintiff means to make no claim of a prior fraudulent intent on the part of defendant, but that it was a wrongful act to proceed with the sale at three o'clock, and under the alleged defective notice.)

The evidence considered most favorably from plaintiff's standpoint, for the purpose of ruling the question of whether defendant's demurrer to the evidence should have been sustained, tends to show the facts hereinafter stated concerning the events of the day of sale and just prior thereto. Because of the death of the named trustee, the advertisement and sale was made by the sheriff of Jackson County as substitute trustee. The sheriff had nine foreclosures advertised for November 23rd. Eight of these sales were to be at the courthouse in Kansas City and this one, questioned here, at the courthouse in Independence. The usual time for sales at each courthouse was two o'clock in the afternoon. The sheriff commenced making the sales at that hour at the Kansas City courthouse. As soon as he finished those sales, he came to Independence, arriving there shortly before three o'clock and commenced this sale by five minutes after three. Plaintiff was represented at the sale by her brother and an attorney. Her attorney had written to defendant on November 18th, stating that his client ''purposes redeeming the property involved, according to the provisions of the law, if such sale be made to the holder of the debt secured by said deed of trust or to any other person for such holder.'' Her brother served the notice of intention to redeem on the sheriff prior to the sale.

Defendant was represented at the sale by an attorney, who bid in the building for it for $18,000. Plaintiff's brother said that he saw this attorney at the building, waiting for the sheriff to come from Kansas City, and that he ''objected to the sale.'' He did not state upon what grounds he objected or whether he told the attorney why he objected. The Independence courthouse had four doors entering the courthouse from the outside, one on each side thereof. The usual

place of holding sales was at the east door. Some sales had been held at the south door. There was no evidence that any sale had ever been held at either the west or north doors. The sheriff made the sale of plaintiff's building at the east door and then went to the south door and resold it there. Defendant's attorney made the same bid at both places and he was the only one who made a bid at either place.

The trust deed provided that the trustee "may proceed to sell the property hereinbefore described, and any and every part thereof, at public vendue, to the highest bidder at . . . front door of the County Court House at Independence, in the County of Jackson, State of Missouri, for cash, first giving twenty days public notice of the time, terms, and place of sale." This blank space for a more particular designation of a door was left blank. The trustee's notice of sale stated the time and place of sale to be "on Monday, November 23, 1931, between the hours of 9:00 A. M. and 5:00 P. M. at the front door of the County Court House at Independence, Jackson County, Missouri."

Plaintiff produced three witnesses who were at the courthouse from about two o'clock until about two-thirty P. M. Two of these waited at the east door. Both were real estate dealers. One of them had been attempting to make a deal for plaintiff to sell or exchange the building since early in the spring but had not been able to do so. The other said that he had tried to get the loan on the building when it was built and "was interested to the extent of wanting to know what it brought . . . wasn't there as a buyer, just more or less of a spectator." Another witness said he was at the south door at two o'clock and stayed until twenty minutes after two; that he came around the courthouse and did not see anybody there; and that he left because he thought maybe they had called it off. He said that he bought and sold real estate and was there looking for bargains. He did not say what he would have bid for the property. None of the witnesses testified that they or anyone else would have made a bid higher than defendant's bid.

Plaintiff's evidence further was that at the time of the sale there was "absolutely no market for property, either for sale or exchange, and no chance to get any money, any loans." Plaintiff's evidence also showed that the building (including the lot) cost more than $70,000 in 1927; that it was valued at that time, by the man who appraised it for defendant's loan, at $64,200; and that it had an annual gross rental income of $6600. Plaintiff's application for the loan was in evidence. It valued the property at $73,250, set out the size, construction, and location of the building, and stated the names, business, and rentals of each tenant. In 1931, part of the building was vacant, due in part to the insolvency of the automobile company which had occupied a portion of it. However, even at the time of

the application all of the building was not rented and the gross rental income was, in part, estimated by stating the amount the unoccupied portions "should rent for." "It was not shown that they ever did.

■ Our ruling is that defendant's contention must be sustained. The fatal defect in plaintiff's case is that, while she seeks to recover damages on the theory that she lost her equity of redemption in the land by a wrongful foreclosure by the mortgagee, her proof shows that defendant had a right to foreclose under the terms of the trust deed because of her defaults. A mortgagee's act of commencing a foreclosure cannot be wrongful when there is a clear right to foreclose. [See Hayward Farms Co. v. Union Savings Bank & Trust Co. (Minn.); 260 N. W. 868.] The most that plaintiff's evidence tends to show is not a wrongful foreclosure by the mortgagee, but only an improper execution of a rightful foreclosure. The cases of Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006, 121 Mo. App. 156, 98 S. W. 783, and Rogers v. Barnes (Mass.), 47 N. E. 602, 38 L. R. A. 145, upon which plaintiff relies are true cases of wrongful foreclosure by the mortgagee. In the Real Estate Syndicate case, the mortgagee had no right to foreclose because he had made a valid extension agreement. In the Rogers case, the mortgagee had no right to foreclosure because there was no default. The case of Stansberry v. McDowell (Mo. App.), 186 S. W. 757, also cited by plaintiff, was not a true case of wrongful foreclosure, because the obligation secured had matured as the court there recognized; but there the cause of action was based on a fraudulent conspiracy to conceal the note and accomplish foreclosure without plaintiff's knowledge, in face of plaintiff's active efforts, made known to defendants, to find the note and prevent foreclosure by paying it. The right to recover there was neither based on wrongful foreclosure nor improper execution of a foreclosure but for acts of active fraud which caused damage. It has no resemblance to this case. Sherwood v. Saxton, 63 Mo. 78, was an action against a trustee for wrongfully releasing responsible bidders who had purchased at a proper foreclosure sale, and then selling at a second sale for less money. Of course, this caused a loss to the mortgagor and there was a definite basis for computing his damages. [For the liability of a trustee for his own wrongful conduct see 41 C. J. 605, sec. 571, p. 1035, sec. 1501; 19 R. C. L. 594, sec. 408.] There are also cases where a mortgagee has sold the mortgaged property under a power of sale authorizing him to do so personally. In such cases the mortgagee in making such a sale has the same duties and responsibilities as a trustee of a trust deed mortgagee. His liability in that situation is governed by the same principles as those applicable to trustees and such cases are not in point here.

■ Plaintiff cites no case which holds that, at least in the absence of a preconceived plan to carry out a fraudulent purpose, a mere

improper execution of a rightful foreclosure is ground for any relief by the mortgagor against the mortgagee except in equity. We have searched for such cases and have found none. On the contrary, every such case, we have examined, sustaining recovery at law for damages by the mortgagor against the mortgagee, has been a case in which the foreclosure was absolutely void because the mortgagee had no right to foreclose at the time he attempted foreclosure... [See Ames v. Higdon (Eng.), 69 L. T. Rep. (N. S.) 292 (sale void because no default); Garrett v. Crawford (Ga.), 57 S. E. 792 (sale void because debt had been paid in full); Aultman & Taylor v. Meade (Ky.), 89 S. W. 137 (sale void because forbidden by statute); Reilly v. Cullen, 101 Mo. App. 32, 74 S. W. 370 (sale void because sold at private sale when private sale was not authorized); Guay v. Brotherhood Building Assn. (N. H.), 168 Atl. 900 (sale void because before maturity of debt); Burnett v. Dunn Comm. & Supply Co. (N. C.), 104 S. E. 137 (sale void because debt had been paid in full); Warren v. Susman (N. C.), 84 S. E. 760 (sale void because without authority); Long v. Hunter (S. C.), 36 S. E. 579 (sale void because debt had been paid in full); Ullman v. Devereux (Tex.), 93 S. W. 472; Id., 102 S. W. 1163 (sale void because without authority); Mosby's Exr. v. Johnson's Admr. (Va.), 10 S. E. 425 (sale void because without authority); see, also, 3 Jones on Mortgages, 997, sec. 2453; 19 R. C. L. 616, sec. 432; 41 C. J. 894, secs. 1119-1199, p. 1036, sec. 1501.] .

The Supreme Court of Massachusetts so limited the decision of Barnes v. Rogers, supra, not only in the original opinion itself, but also in subsequent recent cases. In Sandler v. Green, 287 Mass. 404, 192 N. E. 39, the court held that a verdict was rightly directed for a defendant, who was sued at law for damages for wrongful foreclosure. Defendant had foreclosed, after offering to accept a certain amount for all delinquencies (which was tendered), when plaintiff refused to accept new conditions imposed thereafter. The court said: "The sale by defendant was within the terms of the power. The unaccepted tender did not, of itself, cure the previous breach nor *at law* extinguish or delay the right of the mortgagee to execute the power. . . . The negotiations between the parties . . . did not have the effect of extending the time for the performance of the condition. The breach had already occurred. . . . . The case is unlike Rogers v. Barnes, 169 Mass. 179, *where there was no breach of condition.''.

In Cambridge Savings Bank v. Cronin (Mass.), 194 N. E. 289, plaintiff sued for the deficiency after foreclosure and defendant sought recoupment for damages on the ground that the amount obtained at the sale was unduly low because of plaintiff's misconduct. The court found that there was no misconduct, but while recognizing the rule of Rogers v. Barnes, supra, said: "An action of tort, and a

proceeding to set aside the foreclosure are alternative and inconsistent remedies. . . . *Where the foreclosure was based upon an actual default* and was lawful in form, but *the foreclosure was conducted negligently or in bad faith* to the detriment of the mortgagor, *it has never been decided that an action of tort will lie.*"

Freedman v. Peoples' National Bank (Mass.), 196 N. E. 846, was also a suit at law for damages for wrongful foreclosure. Plaintiff's theory was that the mortgage debt had been satisfied by acceptance of other notes. The court held that the verdict was properly directed for defendant, saying: *"The burden of proof was on the plaintiff to show that there was no breach of the condition of the mortgage at the time of the foreclosure* in order to prevail on this aspect of the case. That burden has not been sustained. The testimony in behalf of the defendant is explicit to the effect that it has not been paid. While the jury was not obliged to believe that testimony, that does not supply the defect in the proof of the plaintiff's case. There is nothing in Rogers v. Barnes, 169 Mass. 179, 47 N. E. 602, 38 L. R. A. 145, at variance with what is here decided." (Our italics.) [See also the earlier case of Randall v. Hazelton, 94 Mass. 412, 12 Allen, 412.]

There is a still more recent case in Massachusetts, Sandler v. Silk, 198 N. E. 749, which sustained a recovery for damages resulting from a foreclosure. It seems to be perhaps more like Stansberry v. McDowell, supra (fraudulent conspiracy to foreclose without plaintiff's knowledge), than like Rogers v. Barnes (foreclosure without right), but it is to be noted that the mortgage foreclosed was without consideration, did not secure any note, and was apparently given for some fraudulent purpose. Anyhow, the consummation of the fraudulent plan deprived plaintiff of security (a subsequent attachment lien) as was its purpose. It is clear that the Massachusetts authorities do not sustain plaintiff's right to recover in this case.

■ There are good reasons why the authorities are thus found in complete accord. When the mortgagee has the right to foreclose, the foreclosure sale passes the legal title. An improper execution of the power of sale may be sufficient ground for a court of equity to set the sale aside. But until it is set aside, it stands as a valid legal transfer of the title and the mortgagor ought to be barred from claiming damages at law because of the transaction as long as he permits it to stand as a legal conveyance of his title. For him to allow it to stand and bring an action at law, because of it, is in the nature of a collateral attack upon its validity. Such a sale may be voidable in equity but it is not void in law. If he desires to challenge its validity (when it is voidable but not void), he should attack it directly and he can only do that by a suit in equity. But when the foreclosure itself is wrongful because no right to sell exists, then such

a sale is wholly void and the mortgagee can acquire no title under it. The mortgagor has the right to go into equity and have it set aside. It would be a cloud on his title and it would also be a means by which he might lose his title to an innocent purchaser, because he could be estopped by laches to assert his rights. In that situation, however, the mortgagor can let the sale stand, and sue at law for damages, because he has the right to collaterally attack it. By suing to obtain judgment at law to be paid its value, he does not admit its validity but he would thereafter be estopped to attack it in equity. Such a suit for damages at law is an especially appropriate remedy where an innocent purchaser buys at foreclosure, because it gives relief against the guilty rather than the innocent party. That was the situation in Rogers v. Barnes, supra.

■ There is another reason why plaintiff was not entitled to recover on her showing in this case: That is, because plaintiff failed to prove that her equity of redemption had any value on the date of the sale. That was an element essential to relief either at law or in equity, because defendant had the right to foreclose on the day set and the most that the mortgagor could be entitled to have, would be what the property was worth then. Not one of plaintiff's witnesses who came to attend the sale, said that he would have bid as much for the property as defendant bid. Plaintiff says that there was no way to show market value because there was no market, and, therefore, the jury was entitled to fix the reasonable value. The trouble with this is that plaintiff's only evidence as to reasonable value was as to reasonable value of the newly completed building in 1927. That might be considered substantial evidence of its 1931 value if plaintiff could have connected it up by showing that values had not changed during that time. Plaintiff did not attempt to make any such showing, and we know from facts, trends, and events during those times, of which we must take judicial knowledge, that she could not make such a showing. This court has said that: "There is no reason why courts should pretend to be more ignorant than the rest of mankind," and that "courts ought not to proceed on the theory they do not know what every one else does know." [State v. Missouri Pacific Ry. Co., 212 Mo. 658, 111 S. W. 500, 504.] Since we judicially know that real estate values did change to a lower level, we cannot in the total absence of evidence of 1931 value consider that plaintiff's 1927 value is substantial evidence thereof.

■ Moreover, in this case there is no evidence to show that the sale was so conducted as to mislead actual bidders or that the attendance of anyone, who would have bid as much as the property sold for, was prevented. The sheriff of the county made the sale as substitute trustee. He had an office in the Independence courthouse with a deputy in charge, where anyone could have applied for infor-

mation. It was apparent that he could not make sales at Kansas City and at Independence at the same time. There is no evidence that either plaintiff, her brother, or her attorney requested him not to sell or made any claim to him that it was improper to sell at the hour of three o'clock or that the failure to designate the exact door in the notice could mislead anyone. Neither is there any evidence that they stated any such ground for postponement to plaintiff's attorney at or before the sale. Plaintiff's own evidence was that the sheriff made the sale at the usual door for sales, and that he cried the sale at both of the only two doors where sales had ever been held. There is no reason to believe from this record that anyone, interested in buying, could not have found the sale. In view of the complete absence of proof that anyone, who would have bid as much as the property sold for, was misled or prevented from being present at the sale, plaintiff's showing seems to be insufficient to warrant granting of relief either at law or in equity. [See Judah v. Pitts, 333 Mo. 301, 62 S. W. (2d) 715, and cases cited; 3 Jones on Mortgages, 911, sec. 2395, p. 943, sec. 2416; 41 C. J. 953, sec. 1394, p. 964, sec. 1411; 19 R. C. L. 599, sec. 414.] Plaintiff's brief says: "How many prospective bidders reading this indefinite notice, stayed away from the sale on the theory that they might be bidding at a sale subject to irregularity? It is impossible to determine how many prospective bidders were thus affected." The trouble with plaintiff's case is that there is no proof that any were thus affected, or that there was anyone desiring to buy the property *at the price it brought*. A judgment cannot be based upon the mere speculation and conjecture that there might be such prospective bidders, or, if there were, that such an irregularity would affect anyone who desired to bid. Proof that persons, who did not intend to bid, did not wait does not make a case. Neither does proof that there was a man looking for a bargain, without showing that he would have been a competitor against defendant's bid.

One theory of plaintiff's case emphasized to the jury was that it was a wrongful act for defendant to foreclose at all. In other words, that the refusal to grant plaintiff a moratorium in such bad times made the foreclosure wrongful. Default had been made which gave defendant the right to exercise the remedy of foreclosure, and it was for the defendant to decide whether to exercise it or to forbear. The power to grant a moratorium because of critical conditions is a legislative and not a judicial power. [Monticello Building Corp. v. Monticello Inv. Co., 330 Mo. 1128, 52 S. W. (2d) 545; Lipscomb v. New York Life Ins. Co., 138 Mo. 17, 39 S. W. 465; Federal Land Bank v. Wilmarth State Bank (Iowa), 252 N. W. 507; First Union Trust & Savings Bank v. Division State Bank, 272 Ill. App. 487: Home Building & Loan Assn. v. Blaisdell, 290 U. S. 398, 54 Sup.

Ct. 231, 78 L. Ed. 413; Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 Sup. Ct. 854, 79 L. Ed. 1593; see, also, note 8 A. L. R. 100.] Our own Legislature has never seen fit to grant a moratorium on real estate foreclosures at any time since the conditions referred to have developed, and defendant's refusal to grant one in this case cannot be any basis for either an action for damages or for punitive damages therein.

The order granting a new trial is affirmed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.