**STANDARD MUTUAL FUND CORPORATION, a Corporation, Respondent,**

v.

**Bill AHMANN, Appellant.**

No. 23073.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1960.

George M. Hare, Independence, Walter A. Raymond, Kansas City, for appellant.

Keith Martin, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff had the verdict. It was for $3,300 actual and $1,000 punitive damages and arose out of alleged fraudulent representations in connection with a real estate foreclosure sale. Judgment in accordance with the verdict was entered and defendant appealed.

The defendant, Bill Ahmann, is a real estate broker who shares an office in Independence, Missouri with his father, a practicing attorney, who is also engaged in real estate operations. Defendant was owner of a seventy acre farm lying southeast of Independence, in Jackson County, and prior to 1957, opened it up as a residential subdivision. About May 1, 1957, he sold a tract therefrom upon which was located a house, to Charles R. and Margaret Carson, husband and wife. The consideration for this sale was (1) a property received in trade; (2) a first mortgage for $4,500, and (3) a second mortgage in the principal sum of $1,500.

Plaintiff, Standard Mutual Fund, is a corporation which buys and sells real estate loans. It shares offices and maintains a close relationship with Standard Home Improvement Company. Even before completion of their purchase, Mr. and Mrs. Carson consulted with Home Improvement Company relative to its making various improvements on the house. The Improvement Company's estimator visited the property and prepared cost estimates. Shortly thereafter the Carsons became owners of the record title and some inquiry was made as to their credit status. Then Mr. Robert Hellebuyck, president of the Standard Home Improvement Company, and financial adviser to plaintiff corporation, called defendant in whose name the property stood at the time these investigations started. Hellebuyck said he called the defendant Bill Ahmann by telephone and was told by him that the Carsons had paid $10,200 for the property; that he had taken two mortgages back—one for $4,500 and one for $1,500. He said he told Ahmann they were contemplating making these improvements and requested that he be advised when Ahmann got his mortgages recorded so that the Improvement indebtedness could be spread upon the record as a third lien. Later on Mr. Ahmann called him back and told him "The papers had been drawn and recorded and it would be all right for me to go ahead and file our mortgage".

Pursuant to contracts dated May 4 and May 30, 1957, made by and between the Carsons and Home Improvement, various improvements were made on the house at a total actual cost, according to Mr. Hellebuyck, of $3,398. The Carsons covered this obligation on June 4, 1957, by executing and delivering their promissory note (secured by third mortgage on the property) in the principal sum of $4,529.40, payable in monthly installments over a three year period. On June 15, 1957, this note was duly assigned for valid consideration to plaintiff corporation by the named payee.

The Carsons did not make their first payment which was due August 5, 1957, under this improvement obligation. Mr. Hellebuyck, by telephone and otherwise, sought without success to locate them. He then again called the defendant and told him Carsons' first payment was in default. According to Hellebuyck, Ahmann said the Carsons were "paying them all right; they were up to date; that they (Carsons) had had trouble of some kind and they went down to, I think, southern Missouri". Ahmann told him he was trying to sell the house for the Carsons—that he would be in touch with them and would have Carson

call. This conversation took place about August 20, 1957. Mr. Hellebuyck testified that Ahmann did not in this conversation tell him that he had started foreclosure, but on the contrary, told him the Carsons were current with their payments. As a matter of fact Ahmann's payments due July 1 and August 1, 1957 were actually in default at the time of this conversation and he had started foreclosure proceedings on August 5, 1957, by publishing notice of foreclosure sale. The foreclosure proceedings under the second mortgage started by defendant were concluded and on August 29, 1957, the property was sold. The defendant testified he was not present at the sale and his father "bid it in for him". The trustee and defendant's father stated they thought defendant was present at the sale. In any event, defendant became purchaser of the property at the foreclosure sale for the amount of the first and second mortgages of which he was the holder.

On September 10th, not having heard from the Carsons, Hellebuyck again called defendant, who told him: "They had foreclosed on the property, bid it in and I was out". The defendant took possession of the property—says he spent $973.03 in further improvements, then traded it to his father, who expended $1,230 in addition, and then sold it for $9,200. Mr. Ahmann in his testimony did not really controvert the facts and occurrences as recited by Hellebuyck, except he was indefinite as to dates of the conversations. In response to an inquiry if, when talking to plaintiff's counsel, he had not laughed and said he had smooth-talked Hellebuyck out of his third deed of trust, defendant replied: "I don't believe I put it quite that way".

On the factual question as to the value of the property on various pertinent dates and whether or not plaintiff's third mortgage had any real equity behind it, the evidence showed: defendant told plaintiff the Carsons had paid $10,200 and this was before Standard had made its improvements. At the trial defendant testified he valued the property at $7,500 at the time of the sale to Carsons. Edgar J. Hall, Trustee in the Ahmann mortgages, said it was worth around $6,000 when the Carsons bought. According to Hellebuyck its value was $9,500 before their improvements. Defendant stated that after the purchase at the foreclosure sale and after he and his father had spent some $2,000 in further improvements, it was sold for $9,200.

On appeal defendant lists four assignments of error. First, that when the foreclosure proceedings were commenced, there had been default under the second deed of trust and so there was a clear right to foreclose and the act of foreclosure was not, therefore, wrongful. As we understand it plaintiff does not disagree with this statement. As we read the petition it does not charge that the foreclosure was illegal or wrongful, but rather alleges affirmative misrepresentations made to the known holder of the third lien that the first and second mortgage payments were current, when in truth and in fact such payments were in default and foreclosure thereunder had been started; that plaintiff relied upon such statements to its damage and that same were made willfully and for the purpose of misleading and defrauding plaintiff. The case was submitted and tried upon this latter basis.

■ Defendant's second point is that there was no legal duty on defendant to notify plaintiff that foreclosure had been started. As a general statement of law this is true, but again it does not meet the issues raised here.

■ Thirdly, defendant says there was no evidence of either fraud or resultant damage to justify submission of either of these issues to the jury. We think there was.

Defendant lastly says the giving of Instructions 1 and 3 was improper for the reason there was no substantial evidence to support the issues there submitted. Instruction 1 first hypothesized the existence,

dates and ownership of the three deeds of trust, then submitted that if the jury found defendant represented to plaintiff that the Carsons were current on their payments, that such representations were false, that defendant knew same were false and defendant at the time had started foreclosure, and that said statements were made with intent to deceive plaintiff and render its security under the third mortgage worthless, and that plaintiff relied on said statements, was deceived thereby and sustained damage, then the verdict should be for plaintiff. Thereafter followed an instruction on the measure of damages. Instruction 3 defined "maliciously" as a wrongful act, intentionally done without just cause or excuse, and not by accident or mistake. Defendant says it was error to give these instructions not because either is an incorrect declaration of law but rather because he claims the evidence did not justify either submission and is not sufficient to form the basis of a verdict and judgment.

It is our opinion that these instructions not only correctly declare the legal principles involved, but in construction are, for instructions, quite clear, concise and were fully authorized under the evidence adduced.

Defendant has cited numerous cases which, he asserts, support the position taken on this appeal. We shall refer to some of those cases.

In Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770, 773, 108 A.L. R. 583, the action was for wrongful foreclosure of a deed of trust which was clearly in default. The sale was early in 1931. Plaintiff said: "There was 'absolutely no market for property'" at the time. Plaintiff offered some opinion evidence that the real estate was inherently worth more than the foreclosure sale price. The court held while plaintiff sought recovery on the theory she lost her equity of redemption by wrongful foreclosure, her proof showed defendant had the right to foreclose under the terms of the trust deed because of her

defaults and that "commencing a foreclosure cannot be wrongful when there is a clear right to foreclose". The case is not one of alleged fraudulent misrepresentations or suppression of facts. The opinion (98 S.W.2d at page 773) points out this difference where Stansberry v. McDowell, Mo.App., 186 S.W. 757, is distinguished in this language: " * * * there the cause of action was based on a fraudulent conspiracy to conceal the note and accomplish foreclosure without plaintiff's knowledge, in face of plaintiff's active efforts, made known to defendants, to find the note and prevent foreclosure by paying it. The right to recover there was neither based on wrongful foreclosure nor improper execution of a foreclosure but for acts of active fraud which caused damage. It has no resemblance to this case". In Owens v. Owens et al., 347 Mo. 80, 146 S.W.2d 569, 577, it was held that where the note and deed of trust were valid subsisting obligations, the motive, intention or purpose of payee in foreclosing were immaterial to validity of the foreclosure sale. Again the facts there are not comparable to our facts.

We have examined the other cases cited by appellant. Some concern the fiduciary duties of a trustee; others are equitable actions; none, we think, rule plaintiff here failed to make a submissible case on fraudulent misrepresentations of pertinent facts in connection therewith.

The Supreme Court of Missouri in Dolan v. Rabenberg et al., 360 Mo. 858, 231 S.W. 2d 150, 154, set forth the requirements for a successful action for fraud and misrepresentation, such as we have here, saying: "There seems to be no dispute between the parties as to the essential elements required to sustain plaintiff's tort action for fraud and deceit, to wit, that 'a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act

to his injury or damage.' Fraud and Deceit, 23 Am.Jur. p. 773, § 20. And see, Nash v. Normandy State Bank, Mo.Sup., 201 S.W.2d 299, 303; Remmers v. Remmers, 217 Mo. 541, 117 S.W. 1117, 1121; Maupin v. Provident Life and Accident Ins. Co., Mo.App., 75 S.W.2d 593, 596; Stoltzfus v. Howey, Mo.App., 54 S.W.2d 501, 505; 37 C.J.S., Fraud, § 3, p. 215. A failure to establish any one of the essential elements of fraud is fatal to a recovery. Dillon v. Hill, Mo.Sup., 178 S.W. 85, 86(1); Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 194."

█ It is true, as defendant asserts, that plaintiff did not offer to pay off the first and second liens and in effect redeem the security for the third mortgage. Likewise, defendant did not offer plaintiff that privilege. Neither, we think, controls this lawsuit and amounts to nothing more than links in the chain of circumstances.

It is our opinion that plaintiff presented substantial admissible evidence; that defendant represented on August 20, 1957, that the Carson payments on the first and second deeds of trust were current and such representations were false as defendant well knew; that defendant withheld from plaintiff knowledge that foreclosure had been started; that all this was done with intent to deceive plaintiff and for the purpose of destroying plaintiff's third mortgage equity in the covered real estate, and that plaintiff relied thereon to its damage. These essential elements were submitted to the jury which found for plaintiff. The jury likewise found that defendant made these misrepresentations intentionally, wrongfully and maliciously. Malice as required for submission of the issue of punitive damages to the jury was thusly defined in Luhmann et al. v. Schaefer, Mo.App., 142 S.W.2d 1088, 1090: "Malice, as a basis for punitive damages in a case of this character, means the intentional doing of a wrongful act without just cause or excuse. This means that defendant not only intended to do the act which is ascertained to

be wrongful but that he knew it was wrongful when he did it. There must be, in order to justify punitive damages, some element of wantonness or bad motive, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and with a bad motive. (Citing authority)". This test was approved in Hussey et al. v. Ellerman, Mo. App., 215 S.W.2d 38, 41.

Under the evidence the amount of damages allowed, both actual and punitive, are for reasonably proper amounts.

Accordingly, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.