## MURRAY vs. ARMSTRONG.

1. A lease made by an agent in his own name is void, and the tenant entering under such lease is a tenant at will, and as such, entitled to a notice to quit before an action of ejectment will lie against him.

2. Tenancies at will may be created without writing, and are not within the provisions of the act regulating conveyances.

*Murray* vs. *Armstrong.*

## APPEAL from St. Louis Court of Common Pleas.

LESLIE & LORD, *for Appellant, insist:*

That each of the instructions asked for in the court below should have been given, and the refusal to give them is such error as ought to reverse the judgment. 12 East., 444; Roscoe, 139.

Two propositions of law of importance to the appellant are contained in the three first instructions asked for and refused. The one is, that possession of the premises is such evidence of title in Murray, that Armstrong purchased with full notice of all the rights of Murray, which notice is an implication of law arising out of possession. The other is, that the lease to Murray as far as Armstrong had any rights, was in full force at the commencement of the action of ejectment.

The refusal to give the fourth instruction, presents the court below in the attitude of deciding that an action of ejectment can be maintained against a tenant in possession who is in under lease unexpired and in full force.

It will be found from an inspection of the record, that Murray, the lessee, covenants that he will build the fence around the leased premises by the first day of May, 1843, and as to any other covenants on his part, there is no time mentioned in which the same are to be performed, consequently as to them there could be no breach until the expiration of the time of the lease. The alienee of the premises is the plaintiff in ejectment, and his title was acquired by purchase on the 16th day of March, 1845. If then a forfeiture of the lease was worked by Murray not building the fence in time, it is no act that Armstrong could take advantage of, because it occurred before Armstrong's title or interest. 12 East, 444; Roscoe, 137.

It is submitted that Baily nor Dillon could maintain ejectment by reason of Murray's non-performance of the covenant in his lease without first making an entry.

The record in this case shows that Murray remained three years in possession of the premises after time that he stipulated to make the fence, and his lessor neither gave notice to quit, declared the lease forfeited, nor made entry. These facts continue the tenancy, and leaves Murray with all the rights under the lease to the termination of the term, that he would or could have had if he had built the fence in May, 1843.

The want of entry by the lessor by reason of Murray's not performing his covenant to fence, keeps alive the relation of landlord and tenant. Murray having continued to occupy as tenant for three years before Armstrong acquired any interest in the demised premises. This tenancy existing, entitled Murray to six months notice to quit.

From the terms of the lease, a party having no interest in the demised premises, reserves the right of entry if the fence is not built by first of May, 1843. This reservation is void. The lessor had no interest to have the fence built in 1843, if built any time before the expiration of the lease as he had to pay for it at the end of the term, it was sufficient to secure the interests and rights of the lessor, and the nearer the end of the term the fence was built, the better for the landlord.

GEYER, *for Appellee, insists:*

1. The attachment, proceedings, judgment and execution, sheriff sale and deed, vested in the purchaser all the estate of Bailey (the admitted owner) with the right to immediate possession, notwithstanding the lease, so called, under which the appellant claimed.

2. The lease, so called, does not vest any interest in the appellant. The authority to make a lease by Dillon is not proved, and the contract made is not and does not purport to be the act of Bailey, the acknowledged owner of the land.

3. The sheriff's deed relates back to the levy of the attachment when the lien of the creditor

commenced; the lease, so called, was not recorded, and if of any force, was valid only between the parties and such as had actual notice thereof. Possession by Murray, is not such actual notice to the creditor as will defeat his lien even if such possession had existed at the time the attachment was levied; and neither the proclamation by Murray at the sheriff's sale, nor the possession when Armstrong purchased, nor both, will be sufficient to give priority to the unrecorded lease. Hill vs. Paul, 8 Mo. R., 479; Jones vs. Luck, 7 Mo. R., 551.

4. If the lease made by Dillon is to be regarded as the act of Bailey, his principal, then the conditions are for his benefit, and a breach which determines the estate revests it in Bailey. It seems to be agreed that the interest of Murray was determined on the 1st May, 1843, by the breach of the condition, and there being no waiver of the forfeiture by Bailey, the estate was revested in him with the right to immediate possession. No act of Bailey or his agent, after the levy of the attachment, could defeat the estate or surrender any right which he then had, as against the attaching creditor.

5. The notice to quit given by the appellee to appellant is not a recognition of any tenancy, and still less of a tenancy under him; on the contrary it asserts that the tenancy if any ever existed, had before been determined; it neither sets up nor renders valid a void lease, nor waives a forfeiture of the term under the contract with Dillon.

6. Even if a notice to the appellant under the circumstances was necessary, it was sufficient to inform him that the forfeiture not previously waived was insisted on, and that the estate was determined.

7. The court below committed no error in refusing the instructions prayed for by the defendant below—because they assume throughout that the lease so called, was valid as against Bailey the principal. The first clause assumes that notice to Armstrong in July, 1845, defeats the lien of the creditor commenced in February, 1844; the 2nd, that possession by Murray in July, 1845, is actual notice of the lease to the creditor in February, 1844. That implied possession is *actual* notice. That a lease by Dillon in his own name passes the interest of his principal, but that the conditions are for the benefit of Dillon himself. That Dillon had power to make the lease, although his authority was in writing and not produced.

8. The whole case as preserved in the record, establishes a clear right of possession in the appellee at the commencement of the suit, and the appellant has not been prejudiced by any decision of the court below.

SCOTT, J., *delivered the opinion of the Court.*

Armstrong brought an action of ejectment against Murray in the Court of Common Pleas of St. Louis county, to recover possession of a small tenement in the county in which he recovered judgment.

William Bailey was the owner of the lot in controversy, and by a deed indented, executed by his agent, P. Dillon, leased the same to Murray on the 15th September, 1842, for 5 years. Among other things, Murray stipulated to fence the lot on or before the first May, 1843, and it was further agreed that if Murray or his assigns failed to keep and fulfil the covenants and stipulations contained in the deed, it should be the right of the said Dillon or his assigns to enter upon the demised premises, and to hold the same discharged of the lease. The deed describes Dillon as agent for William Bailey, and recites that, "the said Dillon, for and in

consideration, &c., hath leased, demised and to farm let, unto the said Thomas Murray, &c.," and is signed by Dillon in his own name only.— Dillon testified that he executed the lease for Bailey, under a power of attorney, and that Murray entered on the demised premises. The fence was not made within the stipulated time, but neither Dillon nor Bailey ever availed himself of the right of re-entry. On the 29th December, 1845, Armstrong notified Murray that the lease had been forfeited, and required him to yield up the premises by the fifth of January following, or suit would be brought. On the 23d February, 1844, J. W. Nelson commenced suit by attachment against Bailey, which was levied on that day on the lot in controversy. This suit was prosecuted to final judgment, (Bailey appearing to the action,) which was rendered on the fifth day of March, 1845, and on the 23d of April of that year, the lot was regularly sold by the sheriff to J. F. Darby, who conveyed to Armstrong the appellee.

Murray asked the court to instruct the jury as follows:

"If the jury believe from the evidence, that defendant had possession of the premises at the time the attachment was levied on which the judgment was rendered, under which the premises were sold to Darby, and continued such possession until Armstrong purchased, such possession is notice to all the world of Murray's title, and Armstrong took the premises subject to the lease of the defendant.

"To constitute possession, it is not necessary that a party actually live upon the premises.

"The power to recover for breach of the covenants in the lease being only reserved to P. M. Dillon and his assigns, Armstrong cannot take advantage of it and avoid the lease.

"The sale by the sheriff, and the sheriff's deed to Darby, operate only to convey Bailey's interest in the land in question, and if the jury find that Murray held a lease of the same land, the term of which was unexpired at the time of the commencement of this action, and that Armstrong had notice of that fact before the purchase, they will find for the defendant.

"Possession by Murray of the premises at the time of the sale to Armstrong, is sufficient notice of Murray's interest in the premises. Dillon, as the agent of Bailey, had power to make a lease of the premises in question, but had no right by law to reserve the right of re-entry to himself for any forfeiture of said lease, and therefore should the jury find that Murray had not complied with the terms of his lease, the remedy for the injured party is upon the covenant in his lease, and not by ejectment.

"If there was a forfeiture on the part of Murray, such as Bailey might have taken advantage of before the title passed out of him, this does not help the plaintiff in this suit, for he was a stranger to the covenant, and the jury will find for the defendant.

"If the jury find that the terms of the lease were not complied with by Murray, yet Armstrong cannot take advantage of non-compliance in this form of action, and Murray is still a tenant from year to year, and is entitled to six months notice to quit the premises, before the action of ejectment can be sustained against them.

"If the jury find that the letter of covenant in the lease has been complied with, the plaintiff cannot recover.

"The jury are instructed that the notice to quit under date December 29, served upon Murray, is a recognition of his tenancy, and that such notice is not sufficient as the foundation of this action."

The court refused these instructions, and the defendant Murray excepted. The court than gave the following instruction to the jury:

"If the jury find from the evidence that the defendant failed to put a fence upon the premises leased by him, composed of posts and rails, posts and palings, posts and planks or palisades, or rails alone laid up in the manner commonly called a worm fence, or of turf with ditches on each side, then the conditions of the lease have not been complied with."

The defendant Murray excepted to this instruction—the jury found a verdict for the plaintiff Armstrong, and a motion for a new trial having been overruled, the cause comes here by appeal.

Nothing is clearer than that the lease made by Dillon to Murray was void. It was the deed of Dillon, not that of Bailey. Story on Agency, sec. 148. Murray entering under a void lease, became tenant at will, and being a tenant at will was entitled to notice to quit before the commencement of the action. Roscoe on real actions, 526. No such notice was given. The notice given in this cause was no notice to quit within the meaning of the law. Tenancies at will, as they may be created without writing, are not within the statute regulating the registry of conveyances.

The other Judges concurring, the judgment will be reversed.