CHRIST LANGE ET AL., Appellants, v. C. M. McINTOSH ET AL.—100 S. W. (2d) 456.

Division One, January 5, 1937.

*Ruark & Ruark* for appellants.

248

*Chas. M. Grayston* for respondents.

GANTT, P. J.—In a suit filed November 26, 1932, plaintiffs sought to have set aside a deed of trust on forty acres of land and trustee's deed conveying same on sale under the deed of trust. In substance

the petition alleged that those interested in the note and deed of trust knew, at the time of the execution and delivery of same, that the grantor in the deed of trust had obtained title to the land by duress. It further alleged that the foreclosure sale was not fairly conducted by the trustee, and prayed that the deed of trust and trustee's deed be set aside. In substance the answer denied the allegations of the petition. The court found the deed of trust and trustee's deed valid. Judgment for defendants and plaintiffs appealed.

In this court plaintiffs admit there was no evidence tending to show that defendants had notice of any fraud connected with the execution of the deed conveying the land to the grantor named in the deed of trust. However, they challenge the fairness of the sale under the deed of trust. The pertinent facts follow:

On April 8, 1932, Edna Ball, record owner and in possession of the land, executed a deed of trust on same to secure a loan of $300 by J. A. McIntosh, real estate and loan agent of Joplin, who was named trustee in the deed of trust. The note was due three years after date and payable to Rowena Rose, an employee in J. A. McIntosh's office. She assigned it to C. M. McIntosh, wife of J. A. McIntosh. The wife had an income from property of her own and furnished the money to make the loan.

On September 7, 1932, Christ Lange, who deeded the land to Edna Ball on November 9, 1931, filed suit in the Circuit Court of Newton County against Edna Ball and others alleging that he deeded the land to her under duress of all the defendants, and prayed the court to determine title to the land. Defendants were not served with process and had no notice of the suit. However, *lis pendens* was filed.

Alarmed by said suit, Edna Ball, on October 10, 1932, conveyed the land, subject to said deed of trust, to Christ Lange and Justin Ruark, an attorney of Newton County.

In substance Lange testified that on October 15, 1932, he told J. A. McIntosh while in Joplin that he (Lange) and Ruark owned the land; that he inquired if McIntosh would accept payment of the $300 note; that McIntosh told him he would, and stated that the first installment of interest had been due seven days; that McIntosh inquired when he would pay the note and he told him as soon as he could; that he did not know there could be foreclosure on default in the payment of interest.

McIntosh testified that Lange said he would pay the note "tomorrow or next day"; that shortly he (McIntosh) heard Edna Ball had moved to Kansas; that on October 20, 1932, he went to the land, found doors and windows removed from the house and no one in charge of the property. He reported conditions to his wife, who ordered foreclosure under the deed of trust. The land was properly advertised for sale on November 18, 1932. On said date McIntosh

and wife went to Neosho, the county seat of Newton County, and at two P. M. at the usual place the trustee read the notice of sale and proceeded to sell the land. Other than persons passing, there was no one present at the sale except Mrs. McIntosh. On her bid of $100 the trustee sold the land, and conveyed same to her. She would have bid $300 and costs of sale for the land.

Lange and Ruark had no actual notice of the sale. However, the newspaper giving notice was regularly mailed to Ruark's office.

There was evidence tending to show the value of the land to be from $2000 to $2500. On November 28, 1932, the land was sold by Mrs. McIntosh to Pontius and wife for $1500.

It is clear that McIntosh, in selling the land, was the active business agent of his wife rather than a trustee representing the interests of both the creditor and debtor. In selling the land for $100 he gave no consideration to the debtor. Indeed, the sale was almost a gift to the wife. In Meyer v. Jefferson Ins. Co., 5 Mo. App. 245, 248, 250, it is said: "Where there are no bidders whatever, there can be no sale; and where, in a sale under a deed of trust, the only bidder is the creditor, represented by the trustee, and property is sold for one-fifth of its cash value, there can hardly be a sale which a court of equity will not set aside on proper application."

Furthermore, in Graham v. King, 50 Mo. 22, we ruled that "the office and duties of a trustee are matters of personal confidence, and he must exercise a just and fair discretion in doing whatever is right for the best interest of the debtor. He must in person supervise and watch over the sale, and adjourn it, if necessary, to prevent a sacrifice of the property."

Furthermore, in Vail v. Jacobs, 62 Mo. 130, 133, we ruled as follows: "But even if the evidence warranted us in making the concession that the trustee was actually present at the sale, we could not then consent to an affirmance of the judgment dismissing the plaintiff's petition. And for these reasons: The property was sacrificed. The testimony tends very strongly to produce the belief that the house and lots were worth from $5000 to $8000, and yet they were struck off to Nagus, the assignee of the notes, the only bidder at the sale, for $1000. . . . He (trustee) should, if present at the sale, and finding that the property was about to be sold for a little over a tithe of its value, have postponed the sale, and awaited a more auspicious moment. It was his 'clear duty' to have done this."

Under all the facts and circumstances in evidence, including the fact that the land sold for one-fifteenth of its value, a court of equity should not approve the sale.

The judgment is reversed and the cause remanded with directions to enter judgment setting aside the foreclosure sale and trustee's deed, and reinvesting title to the land in plaintiffs, subject to the

deed of trust, which is reinstated, and directing the trustee to return the $100 paid for the land, and taxing the costs of the publication of the notice of sale against the land. All concur.