Henry G. HROVAT and Norma Gene Hrovat, Plaintiffs-Respondents,

v.

Mikie Lou BINGHAM, Defendant-Appellant.

No. 7833.

Springfield Court of Appeals.

Missouri.

Dec. 13, 1960.

Powell & Jones, Dexter, for defendant-appellant.

Henson & Henson, Poplar Bluff, for plaintiffs-respondent.

RUARK, Judge.

This is an appeal by the defendant from an adverse judgment in an ejectment suit. The facts are that in 1955 defendant Mikie Lou Bingham's predecessor in title gave a mortgage deed of trust to P. C. Hays as trustee, to secure to the Poplar Bluff Loan & Building Association the payment of a note for $3,200 in monthly installments of $35. The deed of trust was in the usual form with acceleration clause and power of sale and, in addition, contained what is known as the "landlord and tenant clause" (more of that later). The defendant purchased such property for a total consideration of $4,250, cash $1,160, and subject to such loan. She thereafter made extensive improvements, and the property at time of foreclosure was reasonably worth from $7,000 to $12,000. The contractor who made the improvements testified to a value of $10,000. It was testified that on October 30, 1958, the mortgagee wrote to Mrs. Bingham stating that her account was five months delinquent and that unless substantial payment was made before November 10 foreclosure proceedings would be started. Mrs. Bingham says she never got the letter, although she does not contend her payments were not delinquent. First publication of notice of sale in the name of the trustee was made on *November 21*. This called for sale on December 13 following.

On November 21, 1958, the day of the first publication of notice of foreclosure, the mortgagee wrote the defendant a letter as follows:

"Dear Borrower:

"We have this week paid the premium on your fire and extended coverage insurance on your home property as shown on the enclosed receipt notice from Clevlen Ins. Agcy.

"The premium notice gives the expiration date of your new policy, amount of coverage, policy number, property covered and amount of premium. Please check this receipt for any possible error, and keep same for your files.

"Your insurance premium has been charged against your Insurance and Tax Account No. 1767 as per agreement in your loan contract with the Association. When you make your next monthly loan payment we will record the insurance charge in your loan book.

"It has been a pleasure to serve you."

No notice of sale (other than the regular publication aforementioned) was given to the defendant owner, the record mortgagor, or to the holder of a junior mortgage. Defendant testified she knew nothing about the foreclosure. She had left her home (the premises involved) on the Thursday prior to December 13 and was visiting in Kennett on that day. The notice of sale was prepared by the manager of the Loan & Building Association and the newspaper office personnel. Hays, the trustee, was used regularly by the Loan & Building as trustee. However, he had not been actually and specifically requested to make the sale, did not insert the notice of sale, and did not know anything about it until he read it in the paper. He was requested or reminded on the day of the sale and he did appear and conduct the sale on December 13.

The deed of trust and the notice called for sale "at the West Front Door .of the Court House." There were in fact a sort of vestibule, the front door, a short flight of stairs, and an inner door. The sale was

actually held just inside the outer door. There were present ten to fifteen people in this place. The trustee read the notice (the notice was not read outside the front door), and one J. L. Raulston became the highest bidder and purchaser for $3,650. Defendant offered to prove that it was 70 feet from the east side of the street to the door and that at the time of the sale people were walking along the street. This offer was refused.

On December 18, 1958, (five days after the sale) Raulston entered into "Articles of Agreement for Warranty Deed," whereby he contracted to sell the newly bought residence to the Hrovats for the sum of $7,000, payable $500 in cash paid, $4,500 on the following January 1, and a second deed of trust for $2,000. The Hrovats are the plaintiffs in this ejectment suit. Their written contract of purchase did not specifically provide that the Hrovats would take possession, although it did specify that in case of default in payment as provided by the contract the seller could re-enter and take possession. Over the objection of the defendant, the plaintiffs testified to a separate parol agreement with Raulston that they should take possession immediately.

*As to the pleadings:* The petition in ejectment is of the standard variety. It did not allege any notice or demand for possession. The amended answer admits that defendant is in possession and denies the plaintiffs are entitled thereto. For further answer defendant pleads the execution of the mortgage and her purchase subject thereto. She states that thereafter she gave a junior mortgage to one Horne; that the foreclosure was without notice to either herself or Horne; that out of the proceeds of the foreclosure the first mortgage was paid; that the sale was held inside and near the west door of the courthouse, instead of on the outside, and was not publicly announced outside; that the

bid received at foreclosure was grossly inadequate in respect to the market price; that plaintiffs are not bona fide purchasers for value; that within one week after the sale defendant learned of it and that J. L. Raulston, the purchaser at the foreclosure sale, verbally agreed to reconvey the property to her for $4,650 but that he thereafter refused to do so; that defendant has at all times been, and is, ready and willing to reimburse Raulston for the full amount of his bid upon his reconveying the property to her; that the sale was fraudulent and void.

The prayer of the answer is simply for judgment and costs. It does not seek any affirmative relief nor pray the intervention of a court of equity. The action is, as we see it, strictly one at law.[1]

The *appellant's contentions* fall into two groups, viz: The sale was fraudulent and void because (a) the trustee did not sign the notice and was not requested to make the foreclosure until the day before the sale, (b) the sale was not conducted in the proper place, to-wit, outside the courthouse door, (c) under the circumstances the defendant was entitled to actual notice of the intended foreclosure, (d) when taken in conjunction with the foregoing facts the consideration was grossly inadequate. She also attacks the right of plaintiffs to maintain the action because (1) no demand was made for possession and (2) the plaintiffs did not have a possessory interest.

The general rule is that if the holder of the mortgage has no right or power to foreclose, then the sale under an attempted foreclosure is void and no title is conveyed, but if the holder does have the right to foreclose, and if there is a legitimate attempt to foreclose by a trustee acting within the apparent scope of authority, then the sale is not void and legal title passes even though the power of sale may have been improperly exercised.[2] Even though

1. Stone v. Stone, Mo., 176 S.W.2d 464; Koehler v. Rowland, 275 Mo. 573, 203 S.W. 217, 219, 9 A.L.R. 107.

2. Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770, 108 A.L.R. 583; Abrams v. Lakewood Park Ceme-

the proceedings were defective and irregular, the trustee's deed conveys legal title and (we prefer to limit this to a generality) the mortgagor can take advantage of the irregularity only by appealing to a court of equity.[3]

In this case the defendant has not sought the intervention of a court of equity. She willingly tried the case to a jury, and neither the mortgagee, the trustee, nor the purchaser at the foreclosure sale is made a party. Although we do not question the right of a defendant in an ejectment suit to plead equitable defenses,[4] it would appear that by the nature of the pleadings and the conduct of the proceedings, the fact this is an action wholly at law, we are, in determining the rights which passed by foreclosure, limited to a consideration of (a) whether the foreclosure was absolutely void, in which event no title would have passed[5] and the owner could hold possession and test the validity in a later proceeding,[6] or (b) whether it was fraudulent in law as to the defendant and the plaintiffs took or are charged with knowledge of such fraud so that they are not bona fide purchasers. For the purpose of this opinion we will assume, as the defendant contends, (without, however, in any way deciding) that the plaintiffs, because they had not paid the full purchase price, took only in the

same right as their vendor, J. A. Raulston, the purchaser at the foreclosure sale. In considering whether plaintiffs are bona fide purchasers we will, for purposes of this opinion, charge them with such actual knowledge as is shown to have been had by Raulston and such constructive knowledge as the record required them or Raulston to take into account.

It has been said that the purchaser at a foreclosure sale buys under the doctrine of *caveat emptor,* but an examination of the cases shows this to be a limited caveat. The purchaser is required to take notice of everything in the recorded chain of title [7] and the conditions upon which the trustee's power to act depends.[8] But he is not chargeable with knowledge of a mistake, secret instructions, or some "off the record" agreement between the holder and the beneficiary.[9] Under normal conditions the recitals in the recorded record are prima facie (although not conclusive) as to a compliance with the conditions of the mortgage.[10]

Taking up now the defendant's contentions in regard to the invalidity of the foreclosure sale:

*The mortgagee did not "request" the trustee to foreclose.* We will agree that where the deed of trust provides for a request, such is necessary.[11] But it would

---

tery Ass'n, 355 Mo. 313, 196 S.W.2d 278, 283; Petring v. Kuhs, 350 Mo. 1197, 171 S.W.2d 635, 638–639.

3. Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770, 108 A.L.R. 583; Roberts v. Murray, Mo., 232 S.W. 2d 540; see Wakefield v. Dinger, 234 Mo. App. 407, 135 S.W.2d 17; Gempp v. Teiber, Mo.App., 173 S.W.2d 651; Biffle v. Pullam, 125 Mo. 108, 28 S.W. 323; Adams v. Carpenter, 187 Mo. 613, 86 S.W. 445, 451.

4. Bundridge v. McQuown, Mo., 293 S.W. 133; Hynds v. Hynds, 274 Mo. 123, 202 S.W. 387; see Biffle v. Pullam, 125 Mo. 108, 28 S.W. 323; Estes v. Fry, 94 Mo. 266, 6 S.W.2d 660.

5. Cockrell v. Taylor, 347 Mo. 1, 145 S.W. 2d 416, 419; Petring v. Kuhs, 350 Mo. 1197, 171 S.W.2d 635.

6. 59 C.J.S. Mortgages § 600, p. 1049.

7. Jackson v. Klein, Mo., 320 S.W.2d 553.

8. Adams v. Boyd, 332 Mo. 484, 58 S.W.2d 704.

9. Schwarz v. Kellogg, Mo., 243 S.W. 179; Potts v. Smith, Mo., 178 S.W. 881; Beatie v. Butler, 21 Mo. 313.

10. St. Louis Mut. Life Ins. Co. v. Walter, 329 Mo. 715, 46 S.W.2d 166; Hurst Automatic Switch & Signal Co. v. Trust Co., Mo., 216 S.W. 954; Hoffman v. Bigham, 324 Mo. 516, 24 S.W.2d 125.

11. Lustenberger v. Hutchinson, 343 Mo. 51, 119 S.W.2d 921; but see Biffle v. Pullam, 125 Mo. 108, 28 S.W. 323.

appear that the provision in the deed of trust, "at the request of the Association," is primarily for the benefit of the mortgagee and that such request can be implied, or it can be ratified by the beneficiary.[12] We think we need not pursue this subject further, because the evidence shows the request was actually made before the sale was made.

As to the contention that *the trustee did not sign the notice of sale*. It was not necessary for the trustee to personally order or insert the notice[13] or to personally sign it.[14] And even though such notice was not signed and published by him in person, the evidence is clear that he accepted and ratified such signing and publishing.

*The sale was held inside rather than outside the courthouse door*. The deed of trust and the notice of sale provided for sale *at* the west front door. There is no evidence showing whether it was customary in this community to hold the sales inside or outside the front door, or in both places. We have not been cited to, nor have we found, any Missouri cases on the subject of "inside or outside." The two cases advanced by appellant (Rubey v. Huntsman, 32 Mo. 501, and McNair v. Jenson, 33 Mo. 312) are tax cases in which the statute provided that the sale must be held *"before* the courthouse door," and the holding was that the statute must be strictly complied with. These cases are not applicable. The identical question in respect to foreclosure sales has been considered in other states, and so far as we are able to find, where the deed

of trust provides for sale at the front door of the courthouse, a sale immediately inside the front door is a substantial compliance with the terms of the deed of trust.[15] And substantial compliance with the terms of the deed of trust in respect to the place of sale, in the absence of any showing of injury because of slight deviation, is sufficient.[16] Although we do not recommend any deviation from the established local custom (and in event of necessity of such deviation it would be the part of wisdom to announce the holding of the sale on the outside of the door), nevertheless where it appears, as here, that a number of bidders were present inside the outer door, and outside the inner door, and there is a total absence of any evidence that any would-be bidders were lost, we must hold the sale to have been in substantial compliance.[17]

We think the same reasoning would apply to appellant's offer of proof that people were passing up and down the street. In the absence of any evidence that some of these people were, or at least might probably have been, interested in bidding on the property, it would seem that the refusal of this evidence was harmless.

*As to the failure to give personal notice*. Under ordinary circumstances it is sufficient if the trustee gives the notice required by the deed of trust, and no personal notice is necessary to the holder of the equity of redemption or the junior lienholder.[18] But there can be unusual circumstances under which common fairness would require a notice brought home to the

12. 59 C.J.S. Mortgages § 559b, p. 925; see St. Louis Mut. Life Ins. Co. v. Walter, 329 Mo. 715, 46 S.W.2d 166.

13. Petring v. Kuhs, 350 Mo. 1197, 171 S.W.2d 635.

14. Munson v. Ensor, 94 Mo. 504, 7 S.W. 108.

15. Bowman v. Caldwell, 135 Neb. 554, 283 N.W. 194, 120 A.L.R. 657; Seymour v. Lawson, 111 Neb. 770, 197 N.W. 623; see Polson Logging Co. v. Martin, 195 Wash. 179, 80 P.2d 767; see Fox v.

Jackson, 116 Ind.App. 390, 64 N.E.2d 799.

16. 59 C.J.S. Mortgages § 725, p. 1319; see cases cited under note 2.

17. See Peterson v. Kansas City Life Ins. Co., 339 Mo. 700, 98 S.W.2d 770(13), 108 A.L.R. 583.

18. Homan v. Connett, 348 Mo. 244, 152 S.W.2d 1053; Hardwicke v. Hamilton, 121 Mo. 465, 26 S.W. 342; Harlin v. Nation, 126 Mo. 97, 27 S.W. 330; Roberts v. Murray, Mo., 232 S.W.2d 540.

owner or junior mortgagee, such as, for instance, when the mortgagee or the trustee has lulled the owner of the equity into a false sense of security. In such instances the failure to give notice could amount to a fraud.[19] But where, as here, the debt secured was in default and the mortgagee had a clear right to foreclose, the insufficiency of notice would go to the voidability and would not render the foreclosure absolutely void.[20] Though the appellant did not plead any such "lulling," she did, without objection, place in evidence the letter of November 21 heretofore referred to, which might have furnished some basis for such claim (something we do not find it necessary to decide in this case). But, as stated, this is not a suit in equity to set aside or a suit for damages for wrongful foreclosure,[21] and there is no indication that the purchaser at the foreclosure sale had knowledge of such state of affairs. If an otherwise innocent purchaser at a foreclosure sale is required to run the risk of disability in title because of some "off the record" transaction between the mortgagee and mortgagor, then the end result could very well be to depress the bidding at all future foreclosure sales with consequent injury to the mortgagor.

The appellant argues that *the inadequacy of bid price* should be considered in connection with this question. Claims in respect to inadequacy are said to be cognizable only in a court of equity.[22] We apprehend, however, that plain inadequacy is a factual matter to be taken into consideration in determining whether there has been an actual or legal fraud worked against the holder of the equity, and that *gross inadequacy* such as to shock the moral sense and to raise the inference of fraud or imposition[23] might be sufficient to put the otherwise innocent purchaser on inquiry in some instances, at least "for a limited time," and rob him of his innocent purchaser status.[24] However, an investigation of the cases which will be found digested at West's Missouri Digest, Mortgages, ☞369(3), indicates that although no hard, fast rule can be established as to when the consideration, or rather the lack of it, reaches this stage of "grossness," a bid of from one-half to one-third of the market value is not, in and of itself, considered by the equity courts as falling into the "gross inadequacy" class. We think the fact that the property sold for $3,650 did not put the purchaser on inquiry to determine whether there was some breach of faith in failure to give personal notice, and we are of the opinion that the failure to give personal notice to the holder of the equity or the junior lienholder did not render the foreclosure void.

One of the second group of appellant's contentions is that *no demand was made for possession.*

Irrespective of the state of legal title, the basis of ejectment is the right to immediate possession.[25] The deed of trust under which the plaintiffs in this case claim provided that *"if this deed of trust is foreclosed and said premises sold, Grantor shall immediately become the tenant of the purchaser or purchasers at a*

19. Edwards v. Smith, Mo., 322 S.W.2d 770; Shumate v. Hoefner, 347 Mo. 391, 147 S.W.2d 640; Ewing v. McIntosh, 359 Mo. 625, 222 S.W.2d 738; see Hurst Automatic Switch & Signal Co. v. Trust Co., Mo., 216 S.W. 954; Lange v. McIntosh, 340 Mo. 247, 100 S.W.2d 456.

20. See Adams v. Carpenter, 187 Mo. 613, 86 S.W. 445, 451, and cases at notes 2 and 3 supra.

21. Edwards v. Smith, Mo., 322 S.W.2d 770.

22. Roberts v. Murray, Mo., 232 S.W.2d 540.

23. See Roberts v. Murray, Mo., 232 S.W. 2d 540, 546; Harlin v. Nation, 126 Mo. 97, 27 S.W. 330, 331; Trotter v. Carter, 353 Mo. 708, 183 S.W.2d 898, 902.

24. Jackson v. Klein, Mo., 320 S.W.2d 553; see 42 A.L.R.2d 1088, annotation.

25. Section 524.010 and Section 524.080 RSMo 1949, V.A.M.S.; Towers v. Lusby, Mo.App., 175 S.W.2d 721, 722, and cases there cited.

monthly rental of forty Dollars and that Grantor will surrender peaceable possession of the premises so sold to such purchaser or purchasers upon ten (10) days written demand." The deed of trust also provided that all rights, et cetera, therein granted should pass and inure to the benefit of the assigns of the parties. The clause above italicized created the relationship of landlord and tenant and this relationship carried over to the purchasers and those in privity.[26] A landlord may not bring ejectment against his tenant before the termination of the tenancy.[27] Parsons v. Palmer, 124 Mo.App. 50, 101 S.W. 609, is quite similar to the case at hand.

By the plain terms of the recorded instrument the defendant-appellant became the tenant of the purchaser at foreclosure and as such was entitled to retain possession until the provisions in respect to termination were complied with, i. e., notice and demand. We find no evidence whatsoever that, prior to the filing of the suit for ejectment, there was given any notice of termination or demand for possession as provided in the lease portion of the instrument under and through which plaintiffs claim their right. And, for whatever it may be worth to a consideration of this case, we find in the record no evidence of defendant's disclaimer of plaintiffs' title prior to the institution of the suit. It is our conclusion that plaintiffs were not entitled to possession at the time they filed this suit, and the judgment must therefore be reversed. Consequently it becomes unnecessary to consider the remaining claims of error under this group of assignments.

The judgment is reversed.

STONE, P. J., and McDOWELL, J., concur.

26. Beery v. Hoelzel, Mo.App., 171 S.W.2d 741; Sexton v. Hull, 45 Mo.App. 339; Bruner v. Stevenson, Mo.App., 73 S.W. 2d 413; Wade v. McCormack, 68 Mo. App. 12.

27. 28 C.J.S. Ejectment § 27, p. 882; 52 C.J.S. Landlord and Tenant, § 736, p. 595; Parsons v. Palmer, 124 Mo.App. 50, 101 S.W. 609; Minton v. Steinhauer, 243 Mo. 51, 147 S.W. 1014; McIlvain v. Kavorinos, Mo., 236 S.W.2d 322; Tiernan v. Johnson, 7 Mo. 43; Murray v. Armstrong, 11 Mo. 209.