**Robert L. MOORE and Orelle A. Moore, his wife, Plaintiffs-Respondents,**

v.

**John D. ROGERS and Mary Rogers, his wife, Defendants-Appellants.**

No. 54634.

Supreme Court of Missouri,
En Banc.

July 13, 1970.

Rehearing Denied Sept. 14, 1970.

Harold L. Henry, West Plains, for plaintiffs-respondents.

Hildebrandt & Smith, Wayne C. Smith, Jr., Springfield, for defendants-appellants.

MORGAN, Judge.

In this ejectment action, plaintiffs prevailed in the trial court and appeal was taken to the Springfield Court of Appeals.

Having sustained defendants' application for transfer, we review the case "as on original appeal." Rule 84.05(h), V.A.M.R.

For many years, defendants had owned a farm in Howell County which contained approximately 438 acres. On February 26, 1963, they entered into a written contract for sale of the farm, and a few items of personal property, to plaintiffs for $50,000. Sellers were to carry back a balance of $25,000 to be secured by a deed of trust on the land conveyed. Buyers were to take possession as of March 1, 1964. On October 15, 1963, by a supplemental written contract, all parties agreed that transfer of possession would be delayed for one year until March 1, 1965. Other adjustments were made in the payment schedule, but the amount to be carried by the sellers remained at $25,000.

As the parties approached the new closing date, numerous letters were written concerning the details. The parties concede, and this court agrees, that the legal implications arising from this running correspondence are determinative of the primary issue presented. For this reason, we set out the letters placed in evidence by agreement of the parties and have italicized portions thought controlling.

December 7th, 1964

Dear Mr. and Mrs. Rogers:

Received your letter sometime ago and was sorry to hear you have had a dry season too. Although we had the dryest August in history, our corn done remarkably well. We harvested 43,000 Bu. from 488 acres but soy beans was about a half crop. We have had considerable rain the past week and the fire danger has subsided. We have just completed a week of deer hunting here on the farm and we killed 12 nice bucks on the one farm. We now need to thin down the does.

Well March 1, 1965 will soon be here and we are preparing to transfer funds to meet our agreement at that time. I would appreciate your giving me the amounts of the taxes and insurance for next year as I will owe you for ten months on these items.

*Actually, we are at a loss to know what to do with the ranch next year and we are open to any suggestions you might have. It will be impossible for us to move out March 1st.* As we now have to care for my mother-in-law, Mrs. Petersen. She broke her hip six months ago and is just beginning to use crutches a little. She will be 83 years old this month and we feel it would be wrong to make her adjust to new surroundings at this time as she objects to moving to Missouri. *I suppose you folks have your new home under construction. If you have not perhaps you would be interested in staying another year even if you got rid of the cattle and just take it easy.*

We will be glad to hear from you with any suggestions.

> Sincerely,
> Mr. and Mrs. Robert L.
> Moore

December 14, 1964

Dear Mr. and Mrs. Moore:

We received your letter a few days ago. And will say in answer to it that *we are anxious and ready to go ahead with our contract when March the first 1965 comes.*

We have only sold a few of our cows since you was down. We had planned to have a sale in February and selling everything. *But if you want us to stay on the place, we don't want to sell the cattle until next summer.*

*We will stay on the place if that suits you folks. If this don't suit you, you can get anyone you want to for you will have full possession after March 1st, 1965.*

You write us back at once and let us know if you want us to stay. We bought us a house in West Plains, Mo. but we have a man and his wife living in it until we

could move to it. They would be glad to stay in the house for us longer.

The taxes on the land this year 1964, was $111.59 and insurance was $148.00 which was due December 1st, 1964, this is the full amount of taxes and insurance for the one year, 1964.

We will pay the taxes on the basis of 1964 up to March 1st, 1965.

Yours truly,
John & Mary Rogers

---

December 29, 1964

Dear Mr. and Mrs. Rogers:

Received your letter last week and will answer as *I know you will be anxious to hear what we have decided regarding the ranch.*

We have had several things in mind but are reluctant to move anyone into the house from either here or there unless we were close to check things.

*So we have decided to ask you to stay on after we take possession March 1st.* We have had a few other things happen in addition to having Mrs. Petersen with us that has helped us make up our mind not to move this year.

It was my intention to have the ranch paid for when we moved however, we have lost about $20,000 in receivables from the store and of course this has hurt. We have an excellent set up here to make money although it is quite temporary as you know we lease the land we till. This year we had $16,000 left after paying expenses and I'm sure you'll agree that is not bad. Of course, I have my investment that will pay off my mortgage but I had hoped to pay it off ahead of time.

Regarding the mortgage I would like to have you have it drawn up soon and mail it to me, so I can check it and have Mrs. Moore sign it. I will then be able to bring it out with me when we make final settlement on or before March 1, 1965.

I intend to come out at that time, however the weather conditions will effect both the time and length of my stay. I have been wondering what the condition of the 46 acres we seeded to pasture. Did it grow up in weeds and would it be possible to seed it to lespedeza this spring without plowing?

Looking forward to seeing you in February.

Sincerely,
Bob Moore

---

January 1st, 1965

Mr. and Mrs. Moore:

I will write you again we do think you did well this year making money on your crop. *I have another proposition* to write you, and you can answer me on the one you like best.

You can put me up $10,000.00 on March the first 1965, and I'll take a $30,000 loan on the ranch for 20 years and you pay me $1500 on the principal each year and that will cut your interest down each year and that will pay it out in 20 years, and you can pay any amount over that, if you want to at interest paying time. Or we will go by the contract we already have.

You let me know which one you like best and I will have the mortgage fixed and mailed to you.

Mr. Clark and I got that ¼ mile fence put up. We think it will be all right for you to seed the 46 acres to lespedeza when you come.

The last of February or in March is the time they sow it here. There is not much of a growth of weeds on the ground, but there was a lot of cheat come up on the ground. We will try to corporate with you for we are interested in the place being taken care of.

Sincerely,
John & Mary Rogers

January 7th, 1965

Dear Mr. and Mrs. Rogers:

I received your letter today, and will answer immediately so as not to hold up preparation of the papers. Your offer of a $30,000 mortgage instead of $25,000 is interesting and I will accept providing I am not tied to the $1500 yearly payment. My objection to this would be if I paid you 4 or 10 thousand dollars at interest time next year I would still be obligated to pay $1500 each year even if I only owed you $5000.00.

As I stated before it is my intention to pay off this mortgage in a short time and I have over $25,000 cash on hand at the present time. My mortgage that I hold on the store would retire the entire ranch mortgage in seven years, so you see I have the money in sight to take care of the mortgage. My payments will exceed the $1500 yearly that you ask so if you could have the agreement worded so as to give you an average minimum payment of $1500 yearly this would give you what you want and also leave me so I could skip a year if I needed the money for expenses. As you may know my operations here takes a lot of money and by paying for the fertilizer now I can save 17% so I could use the $5000 and make money on it.

Regarding the seeding of lespedeza this spring I would appreciate it if you would check the price of seed and let me know also the amount you usually seed per acre there.

Trusting you will understand my reasoning on this matter and hoping to hear from you soon, I am

Sincerely,
Bob

January 19th, 1965

Dear Mr. and Mrs. Moore:

We went into town today to get the mortgage fixed up and Mr. Landis was busy in Court. We left the papers with him and he was going to draw the abstract up to date and make out the deed of trust. He said it would be about the first of February before he could get it ready for us to send the mortgage down to you to sign.

*We are having the mortgage drawn just like the contract calls for,* we didn't want to carry a thirty thousand dollar loan without a $1500 yearly payment on the principal.

Sincerely,
Mr. and Mrs. John D. Rogers

January 25th, 1965

Dear Mr. Rogers:

I am in receipt of your letter and am at a loss to understand you. You wrote me *offering a new arrangement* whereby you would loan $30,000 with a $1500 annual payment. I accepted this offer asking only that you be guaranteed at least $1500 yearly or more and at any time I was paid ahead I could skip a payment. This is actually what you asked for and better.

You wrote me back and accepted this, even telling me that if the mortgage as drawn did not suit me to have another drawn here and you would try to go along with it. Upon receipt of your letter last week, I went out and bought 200 tons of fertilizer and a new corn planter; I saved $13.25 per ton on fertilizer. Now a week later you have changed your mind and I will have to either borrow money or sell some of my securities.

I am asking you to keep your word and have this mortgage drawn at $30,000 with an average payment of not less than $1500 annually on the premium. If we cannot get together on this perhaps it would be better if I got my mortgage elsewhere and I trust this will not be necessary.

Things are at a standstill here as we have our first snow storm last week and it has been cold. Today it rained and froze so it is nasty. We hear on the air that the mid-

west has been hit hard with storms. Hope you escaped them.

Sincerely yours,
Robert L. Moore

---

January 28, 1965

Mr. Robert L. Moore
Earleville, Md.

Dear Mr. Moore:

Replying to yours of the 25th, I will remain with my offer of taking back a $30,000 loan with a $1500 annual payment plus the interest, but I cannot accept your counter proposal included with your acceptance, of skipping a payment in the event you were ahead with the payments. At my age, I've got to know what I can count on.

The abstracts have been extended, the deed is being prepared, and I must have your definite agreement within the next few days so Mr. Landis can be drawing the note and deed of trust or mortgage.

The length of time of twenty years and the rate of interest is very much in your favor because of recent raises in interest rates. *If you cannot agree to the definite payment of $1500 per year or more, plus interest, we will just go ahead with the original and supplemental contracts as they are.*

It would also suit me if you want to get the money elsewhere and pay in full by March 1st, this year.

Sincerely,
John D. Rogers, R. 3
West Plains, Missouri

---

January 30th, 1965

Dear Mr. Rogers:

I am in receipt of your letter a few minutes ago concerning the mortgage. Naturally, it is o. k. with me to have the mortgage drawn at $25,000 as our original agreement called for. Our only thought in changing was to cooperate with you. It would seem at your age a guaranteed payment would have been better than the original agreement that merely called for the interest and a payment if I care to make one.

I have over $11,000 in the West Plains bank and will transfer the balance required on Monday. This will change some of my plans here however as I usually keep things so I can meet an emergency if one arises.

*Trusting you will have the mortgage drawn according to the original agreement* and forwarded to me in the near future, I am,

Sincerely,
Robert L. Moore

P.S. We are having a snow storm now.

On March 1, 1965, the parties met and executed all closing documents. Buyers demanded possession. Sellers refused on the ground that the letters evidenced an agreed modification of the contract and called for delivery of possession on March 1, 1966.

Buyers filed suit in two counts. The first sought possession and damages for loss of rents and profits, and the second claimed damages for sellers' alleged misuse of the farm by pasturing an excessive number of livestock. The jury returned a verdict in favor of buyers on count one in the amount of $4800 and in favor of sellers on count two. No appeal was taken from the verdict reference count two, and we are concerned only with the judgment entered reference count one.

Sellers contend the trial court erred in failing to sustain their motion for a directed verdict at the conclusion of the evidence. We agree.

 Practically all of the testimony at trial pertained to the alleged misuse of the farm which is not for consideration, and the parties, of necessity, seek to sustain their respective positions by the letters as quoted. As a result, no question of fact was left in the case and the jury should not

have been called on to resolve a question of law, i. e., the legal effect of the letters. The relevant evidence was all documentary and unquestioned. Buyers' right of recovery in ejectment depended upon their immediate right of possession, Hrovat v. Bingham, Mo.App., 341 S.W.2d 365, 371, and this issue could be determined only by considering such correspondence. It was not necessary that the modification of the contract be found in one letter or instrument but it could be established by all of the letters. Logan v. Waddle, 315 Mo. 980, 287 S.W. 624, 625.

█ Buyers by letter of December 7, 1964, initiated the subject, and after saying, "It will be impossible for us to move out March 1st * * *" suggested, "* * * perhaps you would be interested in staying another year * * *" Sellers by letter of December 14 emphasized they "were anxious and ready to go ahead" with the contract, but replied, "We will stay on the place if that suits you folks." Buyers by letter of December 29 confirmed the arrangement by saying, "* * * we have decided to ask you to stay on after we take possession March 1st." By any reasonable interpretation, the usual "offer and acceptance" required to create a contract is shown. Although not challenged, we observe that the benefit of delay, sought and obtained by buyers, was a sufficient consideration. All of the remaining letters pertained to a possible change in the payment schedule on the amount carried and stemmed from the sellers' later offer of January 1, 1965, to carry an additional $5,000 or a total of $30,000. This suggestion was not adopted. However, this offer by sellers was not conditioned on or related to the previous request of buyers that sellers remain on the farm for an additional year. Even though indicating some disgust of each writer for the other, none of the later letters indicate a desire of either to rescind the prior agreement to extend the possession date to March 1, 1966. We interpret the statement of sellers in the letter of January 28, 1965, to-wit: "If you cannot agree to the definite payment of $1,500 per year or more, plus the interest, we will just go ahead with the original and supplemental contracts as they are," as pertaining only to the payment schedule. The parties must have so interpreted that statement as shown by the last letter of buyers to sellers on January 30, 1965, wherein it was said: "Trusting you will have the *mortgage* drawn according to the original agreement * * *" If buyers had wanted to avoid the modification as to possession, certainly they would have so indicated in this last letter.

Sellers, defendants, were entitled to the peremptory instruction requested.

The judgment is reversed.

HENLEY, C. J., FINCH, DONNELLY, SEILER and HOLMAN, JJ., and SHANGLER, Special Judge, concur.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.