The Bankruptcy Estate of BURNETT, WALDOCK & PADGETT INVEST-MENTS, a partnership, Case No. 3–79–00299, Peter W. Giannini, Trustee, Appellant,

v.

C.B.S. REALTY and Olympic, Inc., Appellees.

No. 6739.

Supreme Court of Alaska.

Aug. 26, 1983.

Peter W. Giannini, Giannini & Associates, Anchorage, for appellant.

Joseph P. Palmier, Palmier & Stohr, Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and HANSON, Judge.*

* Hanson, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. The property is legally described as Lot 15–A of Tract 15, Goose Lake Subdivision on Plat No. 65–10, Anchorage Recording District, Third Judicial District.

## OPINION

COMPTON, Justice.

This dispute involves two rival claimants to a plot of land in Anchorage commonly known as the Goose Lake property.[1] The appellant, who is the trustee in bankruptcy for the partnership of Burnett, Waldock & Padgett Investments, claims title to the Goose Lake property by virtue of a quitclaim deed from the previous owner. The appellee, CBS Realty, purchased the Goose Lake property at a foreclosure sale under a second Deed of Trust. (CBS Realty subsequently quitclaimed to Olympic, Inc., but they are related corporations, and both will be referred to here as "CBS".) The superior court declared that CBS, as purchaser at the trust deed sale, holds valid title to the property. For the reasons set forth below, we find the CBS foreclosure sale invalid, and reverse the superior court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Goose Lake property was owned at one time by William Wester, who weighed down the property with a variety of encumbrances, of which only two are relevant to this appeal. In January of 1975, Wester executed a promissory note in favor of the Alaska National Bank ("ANB") secured by a first Deed of Trust on the Goose Lake property.[2] A year later Wester executed a promissory note for $18,000 in favor of John Anderson, which was secured by a second Deed of Trust on the same property. Anderson assigned his interest in this note to CBS early in 1977 and recorded the assignment in Anchorage.

Wester defaulted on both of these notes. After several notices of default under the

2. This deed of trust also covered Lot 14A, Lot 35A, Third Edition to the Original Townsite of Anchorage, according to Plat No. 64–147. The litigation report commissioned by CBS stated that the Deed of Trust on the two properties was made to secure payment of $105,000 and interest. Due to additional advances the entire indebtedness increased to $247,197.76.

first Deed of Trust, and the postponement of a number of foreclosure sales, ANB gave the last notice of default on April 7, 1977, and ultimately scheduled a non-judicial foreclosure sale for August 22, 1977. Sometime in late February or early March of 1977, Pete Zamarello, the general manager of CBS, went with Anderson to Anchorage attorney Denis Lazarus to discuss foreclosure on the note secured by the second Deed of Trust. Lazarus instituted foreclosure proceedings in May of 1977, after receiving a litigation report from the Security Title & Trust Co., the trustee for the second Deed of Trust. The litigation report listed the various liens and encumbrances on the Goose Lake property, among which was the first Deed of Trust in favor of ANB. The litigation report noted that a Notice of Default on the first Deed of Trust had been recorded and that a sale to satisfy the debt had been scheduled.

The sale described in the report was one originally scheduled for April 2, 1977, which was later cancelled and re-noticed for July 8, 1977, and then postponed to August 22. ANB mailed notice of the default and an announcement of the August 22 sale to Anderson, but not to CBS, despite the recorded assignment of Anderson's interest to CBS. Both Lazarus and Zamarello testified that they did not know about the ANB sale until after it had taken place.

About a month before the ANB sale, Wester sold the Goose Lake property, conveying it by quitclaim deed to A.E. Hagberg and Richard C. Burnett. Hagberg and Burnett tried to obtain a preliminary injunction to halt the ANB sale, but the injunction was denied. On August 22, 1977, ANB purchased the Goose Lake property and the other property secured by the first Deed of Trust with an offset bid of $281,-000. Hagberg and Burnett appealed the denial of the injunction, and this court instructed the superior court to set aside the ANB sale. *Hagberg v. Alaska National Bank*, 585 P.2d 559, 562 (Alaska 1978).

Meanwhile, foreclosure on the note secured by the second Deed of Trust had already taken place. A Notice of Default filed on May 12, 1977, set the sale for August 31, and CBS purchased the property on that date with an offset bid of $18,000. The Notice of Default, a Declaration of Default, an affidavit by Lazarus and the published notice of sale all named Anderson as the beneficiary of the second Deed of Trust, even though his interest had been assigned to CBS in January 1977. Lazarus discovered this error after the notice of sale had been published, and he asked Zamarello to appear at the sale to bid on the property on behalf of CBS. Zamarello did so, and Lazarus believed that any defect caused by an erroneous designation of the beneficiary in the documents was cured by having a CBS representative actually present to bid on the sale.

The outcome of *Hagberg* led Burnett to believe that he had acquired good title to the Goose Lake property. (Hagberg died during the appeal, and Burnett acquired Hagberg's share of the property.) Early in 1979, after both foreclosure sales and after our decision in *Hagberg* invalidating the ANB sale, Burnett sold a half interest in the Goose Lake property and the Terrace Manor property to Vern L. Padgett for $80,000. Padgett sold half of his interest in both properties to Dennis L. Waldock.

The investment partnership of Burnett, Waldock & Padgett brought an action to quiet title to the Goose Lake property and were rebuffed by the superior court, which declared that the CBS foreclosure sale was valid and that CBS was the lawful owner of the property. Following the superior court decision, the partnership went into bankruptcy, and the trustee in bankruptcy (hereinafter referred to as "Burnett") appealed.

## II. NOTICE

We first address the issue of notice. The superior court concluded that the ANB sale had no effect on the subsequent CBS sale because CBS did not receive the statutorily required notice of the earlier sale. Foreclosure sales under trust deeds must be conducted in strict conformity with statutory requirements and with the provisions of the deed of trust itself. AS 34.20.-

070(a). Notice of the foreclosure sale must be given to, among others, "any person having a lien or interest subsequent to the interest of the trustee in the trust deed . . . ." AS 34.20.070(c). There is no dispute that notice of the ANB sale was mistakenly given to Anderson and not to CBS. Despite this error, we find that CBS had inquiry notice of the ANB sale.

Before initiating foreclosure proceedings, Lazarus requested a litigation report on the Goose Lake property. The report noted that foreclosure proceedings under the first Deed of Trust had already begun, that a Notice of Default had been filed, and that a foreclosure sale was scheduled for April 2, 1977. Lazarus, when questioned at trial as to whether this information would not serve to alert him to the existence of a foreclosure sale under a more senior encumbrance, replied that the notice was merely a preliminary step, and that although he knew ANB had noticed a default, he "did not know the status of what they had done, or whether it had been remedied."

■ Because Lazarus had this litigation report, with its description of the Notice of Default and the scheduled sale, he had inquiry notice of the ANB sale. An early definition of inquiry notice appears in *McClure v. Township of Oxford*, 94 U.S. 429, 24 L.Ed. 129 (1877): "Every man is chargeable with notice of that which the law requires him to know, and of that which, after being put upon inquiry, he might have ascertained by the exercise of reasonable diligence." The Supreme Court of Oregon has ruled that notice to a mortgagee of a foreclosure sale may be either actual or constructive, and constructive notice may be inquiry notice. *High v. Davis*, 283 Or. 315, 584 P.2d 725, 735 (1978). If Lazarus had exercised reasonable diligence, he would have ascertained that a foreclosure under the first Deed of Trust was imminent.

CBS objects that notice of the sale in the litigation report was not the same as notice of the actual sale because the report describes a sale scheduled for April 2, and the ANB sale was held on August 22. This objection does not alter the fact that minimal inquiry would have apprised Lazarus of the ANB sale. We have held that when circumstances exist which suggest outstanding equities in third parties, there is a duty imposed on a property purchaser to make a reasonable investigation as to the existence of a claim against the property. *Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974). The circumstances in this case were certainly suggestive, and Lazarus should have investigated.

■ One of the findings of fact made by the superior court was that CBS received no notice, either actual or constructive, of the ANB sale. Findings of fact will not be set aside unless the reviewing court is left with the definite and firm conviction on the basis of the entire record that a mistake has been made. *Alaska Far East Corp. v. Newby*, 630 P.2d 533 (Alaska 1981). Looking at the record below, we are convinced that a mistake has been made, and that the finding that CBS received no notice is clearly erroneous.

### III. EFFECT OF PRIOR FORECLOSURE SALE

■ Because we find that CBS had inquiry notice of the ANB sale, it follows that CBS's interest in the Goose Lake property was concluded when ANB bid in the property on August 22, 1977.[3] Under the Alaska trust deed statutes, a foreclosure sale by a senior lienor cuts off the interests of junior lienors. AS 34.20.090(a) provides that a purchaser at a deed of trust sale takes the same title which the maker of the trust deed had at the time the instrument was executed.[4] We have interpreted this

---

**3.** In view of our disposition of the notice issue and the consequent conclusion of CBS's interests, we need not decide whether the CBS sale was so procedurally defective as to be invalid.

**4.** AS 34.20.090(a) reads:

The sale and conveyance transfers all title and interest which the party executing the deed of trust had in the property sold at the time of its execution, together with all title and interest he may have acquired before the sale, and the party executing the deed of

statute to mean that the land purchased at a deed of trust sale is subject to prior encumbrances, but not to those made after the deed of trust is executed. *Alaska Laborers Training Fund v. P. & R. Enterprises, Inc.,* 583 P.2d 825, 826–27 (Alaska 1978); *Lynch v. McCann,* 478 P.2d 835, 836–37 (Alaska 1970). Hence, ANB took title to the Goose Lake property free and clear of the encumbrance of the second Deed of Trust.

The ANB sale was invalidated by this court in *Hagberg,* but the sale was not invalid when it was held. Generally, irregularities in a deed of trust sale render it voidable, not void. *Copsey v. Sacramento Bank,* 133 Cal. 659, 66 P. 7, 8 (1901); *Leonard v. Bank of America National Trust & Savings Association,* 16 Cal.App.2d 341, 60 P.2d 325, 327 (1926). *See* 55 AmJur2d, Mortgages, § 746 (1971). In other words, until a sale is set aside, it stands as a valid legal transfer of title. *Peterson v. Kansas City Life Insurance Co.,* 339 Mo. 700, 98 S.W.2d 770, 775 (1936); *Hrovat v. Bingham,* 341 S.W.2d 365, 368–69 (Mo.App.1960). At the time it was held, the ANB sale was a valid legal transfer of title which foreclosed CBS's interest under the second Deed of Trust. When CBS held a foreclosure sale a week after the ANB sale, there was nothing for CBS to foreclose upon. As a result, the CBS sale did not convey title to the Goose Lake property. Setting aside the ANB sale could not validate CBS's title because CBS never had a title to validate.

CBS was not entitled to hold its own foreclosure sale, as it had inquiry notice of the ANB sale and its interests were concluded by that sale. CBS was entitled to appear and bid at the ANB sale. If it was dissatisfied with the conduct or outcome of the ANB sale, then the remedies available to it were the remedies available to any dissatisfied mortgagee. CBS could have brought an action to set aside the sale or sued for damages. *See National Life Insurance Co. v. Silverman,* 454 F.2d 899,

905 (D.C.Cir.1971); *Hrovat v. Bingham,* 341 S.W.2d at 369.

The suit brought by Richard Burnett and A.E. Hagberg made any action by CBS unnecessary. When this court set aside the ANB sale in *Hagberg,* Burnett and CBS resumed the positions they held before the sale took place. CBS was re-established as the beneficiary of the second Deed of Trust, and may look to Burnett for satisfaction of the debt underlying that deed of trust. Burnett, as the successor in interest to William Wester, is entitled to ownership of the Goose Lake property, along with the opportunity to redeem it from the many encumbrances upon it. As the holding of *Hagberg* made clear, Burnett has the right under AS 34.20.070(b) to cure any default on debts secured by either Deed of Trust by tendering the arrearage due. 585 P.2d at 561.

## IV. CONCLUSION

For the reasons stated above, we find that the CBS sale was invalid and did not convey title to the Goose Lake property. This case is remanded to the superior court with instructions to vacate the Trustee's Deed issued to CBS on September 7, 1977.

REVERSED and REMANDED for further proceedings consistent with this opinion.

RABINOWITZ, Justice, concurring.

I agree with the court that the CBS sale was invalid and should be set aside. However, I disagree with the proposition that the CBS sale was defective because the ANB sale stood as a valid legal transfer of title and foreclosed CBS' interest under the second deed of trust until it was set aside, leaving nothing for CBS to foreclose upon. In my view, this conclusion misinterprets the logical implications of the void/voidable distinction. The effect of the principle that "irregularities in a deed of trust sale render it voidable, not void" is to legitimate such

trust, his heirs and assigns have no right or privilege to redeem the property, unless deed

of trust so declares.

sales until a court declares them invalid. However, once such a declaration is made, I think the sale must be deemed void *ab initio*. The void/voidable distinction does not dictate that a decision such as that announced in *Hagberg v. Alaska National Bank*, 585 P.2d 559, 562 (Alaska 1978), be applied prospectively which is, in effect, the court's ruling today.[1]

I reach the conclusion that the effect of *Hagberg* was to put the parties in exactly the position they would have occupied had the ANB sale never taken place.[2] From this it follows that it is incorrect to conclude that "CBS never had a title to validate." Assuming that the ANB sale never took place, CBS had the right to foreclose pursuant to its second deed of trust. Under AS 34.20.090(a), CBS would have taken title subject to ANB's prior interest, but this result is not tantamount to a conclusion that CBS took "no title at all." It seems to me logical to conclude that once a transfer has been set aside, it is deemed void *ab initio* for all purposes.

My conclusion that the CBS sale should be invalidated rests upon considerations similar to those underlying our decision in *Hagberg*. Burnett was effectively denied the opportunity to exercise his right to redeem the property under AS 34.20.070(b) prior to the CBS sale. Although Burnett had notice of the CBS sale, it would have been senseless for him to have attempted to cure any default on the debt to CBS after the ANB sale, since the latter (if valid) would have eliminated any obligation on his part to CBS.[3] AS 34.20.090(a). Thus, it is not surprising that after the ANB sale he chose not to exercise his statutory right to remove the second encumbrance. It would be unfair to conclude that he should have predicted the result in *Hagberg* and exercised his right to redeem the second deed of trust prior to the CBS sale. As a practical matter, Burnett was therefore denied his statutory redemption rights prior to the CBS sale. For this reason, I concur in the court's holding that the CBS foreclosure should be invalidated.

1. Research has failed to uncover support for the court's conclusion that a "voidable" sale remains valid for some purposes after it is set aside. *Compare* the majority's conclusion with *Leonard v. Bank of America National Trust and Savings Ass'n*, 16 Cal.App.2d 341, 60 P.2d 325 (1936) (action by mortgagor to set aside foreclosure sale would only be entertained if plaintiff offered to redeem the land since he who seeks equity must do equity, and thus sale was treated as "voidable" rather than "void"); *Copsey v. Sacramento Bank*, 133 Cal. 659, 66 P. 7 (1901) (sale at which mortgagee purchased is voidable only by mortgagor who retains the right to pay debt and redeem the land); *Peterson v. Kansas City Life Ins. Co.*, 339 Mo. 700, 98 S.W.2d 770 (1936) (improper execution of power of sale renders sale voidable in equity, not void in law; mortgagor must sue in equity to have sale set aside); *Hrovat v. Bingham*, 341 S.W.2d 365 (Mo.App.1960) (if mortgagee has power to sell and there is legitimate attempt to act within scope of authority, sale is not void if power of sale improperly exercised; mortgagor may appeal to have sale set aside by court of equity, despite passage of legal title, if irregularities warrant relief—thus, sale is "voidable").

2. *See* J. Osborne, Mortgages § 341 (2d ed. 1970) ("[w]hen [an] invalid sale is completed the mortgagor may sue in equity to set the sale aside and restore the situation as it was before the sale"); 2 L. Jones on Mortgages § 1681 (6th ed 1904) ("[w]hen a sale is set aside by order of court the title of the purchaser is vacated and the mortgage is restored to the same position it occupied before the proceedings were commenced").

3. It was Wester, Burnett's predecessor in interest, who was personally liable to CBS.